[Crim. No. 5492. Second Dist., Div. Two. May 16, 1956.]

THE PEOPLE, Respondent, v. DONALD SCHRAIER, Appellant.

Roger J. Pryor for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MOORE, P. J.—Convicted of having had possession of marijuana cigarettes (Health & Saf. Code, § 11500) defendant appeals from the order granting him probation,* and from the order denying his motion for a new trial.

Officers Naylor and McMahan of the Long Beach Police Department had for two hours been watching a cottage on Cherry Avenue, Long Beach, prior to the arrival of appellant

---

*An order granting probation is deemed a final judgment for purposes of appeal. (Pen. Code, § 1237.)

and his companions in an automobile. The cottage was the residence of one Ray Anderson. It had been under surveillance by the police for several months by reason of their knowledge of certain undisclosed activities at the house during that time. On the evening in question, they were making a routine check on the house and particularly were looking for Messrs. Dement and Woods who were under bail for prior possession of marijuana. They had not been convicted. About 8:15 p. m. Dement emerged from the cottage, but was not arrested. When one Fowler later came out, Officer Naylor arrested him. But what, if anything, the officer found on him does not appear. At some time and for some reason the officers had also arrested one O'Donnell, but it does not appear that he came out of the Cherry Street house or that he had any marijuana on him. At 9:55 while Officer Naylor and his partner sat in their police car with Fowler and O'Donnell, Naylor observed a car with three occupants enter the driveway of the Anderson cottage. All three left the conveyance and entered the house. The officer had never seen defendant Schraier before. For about 15 minutes Naylor and McMahan observed the cottage from different positions. Their attempts to see the interior were frustrated by the drawn shades. The three men who came out of the front door about 10:15 were Almond, appellant, and Ord. The latter was also a stranger to the police, but they recognized Almond. While Naylor was about 35 feet away, Almond and Ord entered the conveyance on the passenger side. Then as Naylor for the first time observed Schraier standing near the driver's seat, Almond suddenly left the vehicle, and as promptly reentered it. There was some conversation that the police could not hear, but as soon as Almond had entered it for the second time, Officer Naylor, with neither a search warrant nor a warrant for arrest, said to appellant, "I am a police officer." Whereupon appellant placed his right hand in his right outside coat pocket; the officer grabbed his right wrist and held his hand in that pocket. When it was finally withdrawn from the pocket, the hand was empty. Schraier's resistance was only casual, indeed he was cooperative. While Naylor was holding appellant, he saw Almond insert a white cigarette into his mouth and swallow it and at the same time lock the door on the passenger's side, thereby preventing McMahan from entering the car. Naylor searched defendant's person and brought forth the contents from his pockets, among which

were two white paper, hand-rolled cigarettes. A chemical analysis subsequently disclosed them to contain marijuana. The officer did not testify which pocket of the jacket yielded the cigarettes and there is no basis for an inference that they were in the right outside pocket. Of course, a search cannot be justified by discovery of "contraband" objects. (*People* v. *Brown*, 45 Cal.2d 640, 643 [290 P.2d 528].)

Almond admitted to the officers that he and Ord had gone to the cottage "to see what was happening" and that he had swallowed the marijuana cigarette. However, appellant denied all knowledge of the cigarettes which had been removed from his pockets, and stated that his mother and his girl friend had worn his "coat." He said he had seen marijuana before; was a musician; had associated with musicians who used marijuana cigarettes. He did not "know how the two cigarettes happened to be in his pocket." After he had entered the house, he had doffed his coat and placed it aside. It was his belief that the two hand-rolled white paper cigarettes must have been placed in the coat pocket by some other person by mistake.

Of the five persons who were searched, the police arrested only those who had marijuana on them. Ord, who sat next to Almond when the latter swallowed the cigarette, was searched, but having no narcotic on his person, he was not then arrested.

### Was There an Unlawful Search?

Appellant contends that if the arrest preceded the search, it was unlawful because it was without probable cause. Such contention is consonant with the law. There was neither knowledge of appellant's having a criminal record, nor of his being addicted to the use of narcotics. That he actually did at the time have a narcotic cigarette in his pocket cannot justify the search by the officer. (*People* v. *Brown, supra.*)

 While the Anderson cottage had been under surveillance by the narcotic detail for several months, it had not been raided by the police in search of people practicing crime. Insofar as knowledge about appellant is concerned, the house had sheltered no associate of his known to have been a narcotic addict. While the house was closed to curious eyes, and strange men drove upon its premises and sauntered upon its walks, those facts are not authority to arrest a man standing on the adjacent street. The officers had no report that appellant would be present. They had visited the cottage to

make a routine check and to find Dement and Woods who had been previously charged with possession of marijuana. Although the cottage had been under surveillance by the narcotic detail for several months, there is no evidence that appellant had visited it before or that its master had ever been convicted of crime.

These activities at a suspected place at 10 p. m. with five people emerging from the cottage at the same time, two suspects already under arrest, might have given rise to a suspicion that any associate of a criminal there was of the same ilk. But a mere suspicion does not justify the arrest or search of a person present under such circumstances. He bore no evidences of a criminal character; he had committed no act that would reasonably indicate a readiness to violate any law; he had no criminal record; no reliable informant had reported a fact or such a suspicious circumstance as would reasonably have warranted action by the law-enforcing agencies. In *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57], and *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52], cited by respondent, there was an act by each suspect that reasonably impelled the officer to search. Blodgett at 3 a. m. in downtown Oakland, sat in the rear seat of a cab, double parked. It had two other ''fares.'' When the officers approached to investigate, Blodgett hastily withdrew his hand from behind the seat at its junction with the cushion. After his two companions alighted from the car, the officer removed the seat and found three marijuana cigarettes at the point whence Blodgett had withdrawn his hand. No one had sat in the seat after it had been cleaned until Blodgett and a Mrs. Sanders occupied it. In the Martin case, he and his companion sat in an automobile at 11 p. m. on such a street of Oakland as to arouse the suspicions of the police. When the latter approached Martin and his party in their police car, the two men fled in great haste pursued by the officers who duly stopped them. The right hand of Mr. Dial, the driver, and the left hand of Martin were on the center of the seat. When they held their hands in front of them, at the officers' request, the latter saw a small bag in the seat. It contained marijuana. In *People* v. *Farrara,* 46 Cal.2d 265 [294 P.2d 21], also cited by respondent, no evidence was presented for the purpose of showing whether the officers acted lawfully. The case had been tried prior to the Cahan decision (44 Cal.2d 434 [282 P.2d 905]). The court inferred that the officers had information indicating guilt, but there

was no proof as to whether such information was such as to constitute reasonable cause to justify the arrests, hence the presumption that they had acted lawfully. Therefore, the three cited authorities are not apropos.

In searching Schraier, as the officers did, they had no information prior to the officer's seizing appellant's hand that he had committed a felony or that he was at the time doing an unlawful act. Therefore, the search was illegal and the contraband taken from his pocket was inadmissible.

. The judgment and the order are reversed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 29, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 12, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.