[Crim. No. 3184.   First Dist., Div. One.   Oct. 30, 1956.]

THE PEOPLE, Appellant, v. YET NING YEE, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Appellant.

James Martin MacInnis for Respondent.

BRAY, J.—On the ground of an unlawful search and seizure under the rule of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], an information charging defendant with violation of section 11500, Health and Safety Code (possession of heroin), was dismissed. Plaintiff appealed.

## Question Presented

Under the circumstances here, did a search warrant authorizing search of described premises and of one Jack Yee authorize search of defendant (another person than Jack Yee) present there?

## Record

Federal Narcotics Agent Prziborowski filed in a municipal court of San Mateo County an affidavit that he had reasonable cause to believe, and did believe that Jack Yee, who resided and maintained a business establishment at described premises known as Five Points Laundry, had in his possession or in or upon said premises opium, opium pipes and other paraphernalia used in the preparation, possession, use and sale of opium.[1] Armed with a search warrant issued upon said affidavit authorizing the search of the entire premises "and of every thing and place in or on said premises, and of the person of JACK YEE," Agent Prziborowski and four law enforcement officers entered the Five Points Laundry. The business establishment was divided into two sections. The front section consisted of the business office with a cash register and business counter. The rear section consisted of a laundry workroom. Also located in the rear part of the building were a bedroom and a bathroom. On entering, the officers found no one in the front section. As they proceeded towards the rear they met a man at the swinging door between the sections who told them he was the operator of the laundry. (He was later identified as Gee Yee, also known as Jack Yee, the owner of the premises (apparently the man named in the warrant).) The officers proceeded into the rear section where there were two other Chinese, one being defendant. Prziborowski told all three that he had a search warrant to search the building and was looking for a man named Yee. All three said they were named Yee. The officer did not know nor ask which one was Jack Yee. Prziborowski noticed that defendant was "milling around playing with a top or a Yoyo after I said I had a search warrant so I became suspicious of him and I went to him and I asked him if his name was Yee and he said yes, his name was Yee." Prziborowski then searched defendant and found in his watch pocket a small bindle which defendant admitted was heroin. Prziborowski then placed defendant under arrest, and upon further search,

---

[1] As defendant concedes the propriety of the issuance of the search warrant we deem it unnecessary to detail the allegations of the affidavit.

found another bindle of heroin underneath the stocking on defendant's right leg. After the search defendant said his name was "Frank Yee." At no time did he say it was Jack Yee nor was he asked if he owned or rented the premises. He later gave his name as Kim Yut Yee and Yet Ning Yee. While Prziborowski was occupied with defendant other officers found on a table in the rear of the premises bottles which gave off the odor of and contained an opium derivative. Jack Yee admitted owning and using it. After being held to answer at the preliminary examination, defendant moved in the superior court under section 995, Penal Code, to dismiss the information.[2]

## WAS THE SEARCH AND SEIZURE ILLEGAL?

We believe it was. ▉ In *People* v. *Soto,* 144 Cal.App.2d 294 [301 P.2d 45], this court discussed the various cases applying the rule of *People* v. *Cahan, supra,* 44 Cal.2d 434, and pointed out (p. 298): "The real criterion as to the reasonableness of a search is whether or not there has been the commission of a public offense in the presence of a police officer, or whether, under the facts, the police officer has reasonable grounds to believe that the defendant may have committed a felony." Here, there is no contention that prior to the search of defendant's person any public offense was committed in the presence of the officers.[3] (See *People* v. *Brown, supra,* 45 Cal.2d 640, 642 [290 P.2d 528].) Therefore, we are confined to the question of whether, under the facts, the officers had reasonable grounds to believe that *defendant* may have committed a felony. ▉ "Reasonable or probable cause has been discussed in many cases. Generally speaking, it means 'such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' " (*People* v. *Soto, supra,* 144 Cal.App.2d at p. 298.)[4] ▉ At the

[2]A motion to set aside the information is the proper way to determine whether a commitment is based entirely upon incompetent evidence. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 271 [294 P.2d 23]; *Rogers* v. *Superior Court,* 46 Cal.2d 3 [291 P.2d 929].)

[3]Also, in the absence of "reasonable cause," a search either before or after an arrest cannot be justified merely because it revealed that defendant was in fact guilty of a felony. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528].)

[4]As pointed out by plaintiff, Prziborowski was a federal agent and not a "peace officer" justified to make an arrest under section 836, Penal Code, as he is not included in the definition of "peace officer" in section 817. Section 836, subdivision 3, provides that a private person may

moment of search the only fact bearing on the question was that defendant was on premises which the officers had reason to believe contained opium. That fact alone would not justify either his arrest or a search of defendant's person. (*People* v. *Kitchens,* 46 Cal.2d 260, 263 [294 P.2d 17]; *People* v. *Soto, supra,* 144 Cal.App.2d at p. 300-301.) There was nothing to indicate to the officers that defendant was anything other than a casual visitor to the room. ■ As said in *People* v. *Schraier,* 141 Cal.App.2d 600, 602, 603 [297 P.2d 81]: "There was neither knowledge of appellant's having a criminal record, nor of his being addicted to the use of narcotics. That he actually did at the time have a narcotic cigarette in his pocket cannot justify the search by the officer. . . . [A] mere suspicion does not justify the arrest or search of a person present under such circumstances. He bore no evidences of a criminal character; he had committed no act that would reasonably indicate a readiness to violate any law; he had no criminal record; no reliable informant had reported a fact or such a suspicious circumstance as would reasonably have warranted action by the law-enforcing agencies."

■ Plaintiff contends that defendant's "furtive conduct" constituted reasonable cause for the search. The sole basis for this claim of furtive conduct is the following testimony by Prziborowski: ". . . I noticed the defendant Frank Yee *milling around playing with a top or a Yoyo* after I said I had a search warrant so I became suspicious of him and I went to him and I asked him if his name was Yee and he said yes . . ." (Emphasis added.) Just what was meant by the phrase "milling around" is difficult to determine. Generally, the term is used with reference to a group or crowd. Presumably when applied to an individual it means he was moving rapidly around the room, in this case playing with a top or yoyo while doing so. The officer did not claim that such conduct might have been caused by the use of a narcotic or that it was in any way indicative of such use. We fail to see anything in defendant's action that would reasonably cause a person to suspect that he had narcotics in his possession.

■ In *People* v. *Kitchens, supra,* 46 Cal.2d 260, 263,

make an arrest "When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." At least two of the men accompanying Prziborowski qualified as "peace officers" under that section. The question still remains whether any of the peace officers or Prziborowski as a private person had reasonable cause to believe defendant had committed or was committing a felony.

there is an intimation that where an officer in good faith mistakes another person for one whom the officer has reasonable grounds to believe is guilty of a felony, and searches the other person, finding on him evidence of the commission of a felony, the search and the consequent arrest is legal. Such rule, however, is not applicable here, as the officer does not claim he mistook defendant for the person named in the search warrant. There were three Yees present and the officer made no effort to find out which one was Jack, named in the warrant. Again, he knew, because he so stated in his affidavit for search warrant, that Jack was the owner of the laundry and the tenant of the premises. Moreover, he had already been told by the first person he encountered that he was the laundry owner. Thus he must have known that defendant was not the person mentioned in the search warrant.

Although the principles of *People* v. *Soto, supra,* 144 Cal. App.2d 294, apply here, the facts are different. There, before going to the room where the defendant was, the officer among other matters had reasonable grounds to believe that narcotics parties had been going on there for two weeks, and immediately before entering met a narcotic user coming therefrom who told him that he had just used narcotics therein. On entering the room the officer found the tenant asleep in bed and the defendant with his shoes off. Thus, the officer had reason to believe that the room was used for narcotics parties, that the use of narcotics therein had just taken place, and it was reasonable to assume that the only awake occupant in the room had some connection with that use, and was concerned in it. In our case, while the agent's affidavit stated that the room had opium in it, there was no statement nor information that the room was used for the use of narcotics nor for the sale thereof. There was nothing to justify the assumption that anyone other than Jack Yee who was alleged to be the possessor of any narcotics in the room, had any knowledge of their presence.

The most serious question in the case is whether the discovery of the opium derivative constituted probable cause which would have justified the officers in arresting and searching the three persons then on the premises, and if so, whether such fact would have eliminated the taint of illegality in the original search of defendant. On a table in the back of the laundry bottles were found. A jug was found in a shelf or compartment under the table. The bottles smelled of opium derivative. The jug was half full of a liquid which smelled

similarly. Gee Yee (Jack Yee) admitted ownership of the bottles and said the ''Yen Shee Shuey'' was his. Two of the bottles and the jug contained considerable quantities of opium derivative. In the living quarters there was a smell of opium. (There was no evidence that defendant had been in the living quarters.) Prziborowski stated in the affidavit for search warrant that he had been advised by a reliable person that the latter had made purchases of opium from Jack Yee and that Jack kept and possessed opium at the laundry premises. Defendant was in the room where this contraband was, and his action ''milling around'' and playing with a yoyo or top, might justify a belief that his presence in the room had not been momentary but of some duration, and therefore might justify a reasonable suspicion that he had some connection with the contraband that was visible in his immediate presence. This might have justified an arrest of all three men, including defendant. Assuming that it would, such fact would not legalize the preceding illegal search.

It has been held that where an arrest for a felony committed in the presence of an officer is lawful, a search incidental to such arrest is not unlawful merely because the search *preceded* rather than *followed* the arrest. (*People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535] ; *People* v. *Simon, supra,* 45 Cal.2d 645, 649.) However, that rule is based upon the requirement that ''the officer had reasonable cause *before the search* to make an arrest and whether the search and any seizures incident thereto were or were not more extensive than would reasonably be justified as incident to an arrest. (See *United States* v. *Rabinowitz,* 339 U.S. 56, 60-64 [70 S.Ct. 430, 94 L.Ed. 653].)'' (*People* v. *Simon, supra,* at p. 648; emphasis added.) As further said in the Simon case (p. 648) : ''Thus, *if the officer is entitled to make an arrest on the basis of information available to him before he searches,* and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest.'' (Emphasis added.)

As we have pointed out hereinbefore, the officer did not have information before he searched defendant which would have justified an arrest. Thus, no evidence discovered after the search could make legal a search which was illegal. See *People* v. *Brown, supra,* 45 Cal.2d 640 and cases therein cited, to the effect that ''a search, whether incident to an

arrest or not, cannot be justified by what it turns up" (p. 643) and "If, therefore, it is necessary to rely on the search to justify the arrest, the conclusion is inescapable that a search that cannot be justified by what it turns up cannot justify the arrest." (P. 644.)

The order dismissing the information is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied November 14, 1956, and appellant's petition for a hearing by the Supreme Court was denied November 28, 1956. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.