[Crim. No. 6108. In Bank. Mar. 27, 1958.]

THE PEOPLE, Respondent, v. ELMER TAHTINEN, Appellant.

Elmer Tahtinen, in pro. per., and Albert C. Garber, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, William E. James and William M. Bennett, Deputy Attorneys General, for Respondent.

TRAYNOR, J.—The trial court, sitting without a jury found defendant guilty of a felony violation of section 11500 of the Health and Safety Code. It also found that he was previously convicted of a felony violation of federal narcotics laws and a misdemeanor violation of section 11500 of the Health and Safety Code and sentenced him to imprisonment in the state penitentiary for the term prescribed by law. (See Health & Saf. Code, § 11712.) Defendant appeals.

It is contended at the outset that defendant was deprived of his right to a speedy trial. (See Cal. Const., art. I, § 13; Pen. Code, §§ 681a, 686, 1050, 1382.) The information was filed November 29, 1955. On December 1, 1955 defendant appeared for arraignment. The public defender was appointed to represent him, and the case was continued to December 6 for plea. On December 6, defendant by his counsel moved to set aside the information (Pen. Code, § 995), and the case was continued for disposition of the motion until December 21. On December 21 the court denied the motion to set aside the information. Defendant pleaded not guilty and denied the prior convictions, and trial was set for January 26, 1956. On January 26, trial was postponed until February 10. On February 10, trial was postponed until February 14. On February 14, trial was postponed until February 15. On February 15, trial was postponed until February 16. On February 16, trial was postponed until February 17. On February 17, trial was postponed until February 20. On February 20, defendant withdrew his former denial and admitted the prior convictions, and trial commenced. On February 21, the jury announced that it was unable to reach a verdict, and the court declared a mistrial and continued the case to February 24. On February 24 trial was reset for March 28. On March 28, defendant waived jury trial and by his counsel stipulated that the case be decided on the evidence produced at the preliminary hearing and such other testimony as either side might adduce. Trial was continued to April 20. On April 20, trial was again continued to April

23. On April 23, trial was completed, and the court found defendant guilty as charged.

Section 1050 of the Penal Code provides: "The court shall set all criminal cases for trial for a date not later than thirty (30) days after the date of entry of the plea of the defendant. No continuance of the trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance. . . . Criminal cases shall be given precedence over all civil matters and proceedings. If any court is unable to hear all criminal cases pending before it within thirty (30) days after the respective defendants have entered their pleas, it must immediately notify the Chairman of the Judicial Council." Section 1382 of the Penal Code provides: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . . 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial in a superior court within sixty days after . . . filing of the information. . . ." It is well settled, however, that the constitutional right to a speedy trial and the foregoing statutory requirements may be waived. (*Ray* v. *Superior Court,* 208 Cal. 357 [281 P. 391] ; *People* v. *Echols,* 125 Cal.App.2d 810, 818 [271 P.2d 595].)

The record does not disclose upon whose application the continuances for plea and for disposition of the motion to set aside the information were granted. Since they were for defendant's benefit, however, they are fairly chargeable to him.

Trial was set for January 26, 1956, more than 30 days after entry of defendant's plea on December 21. It appears, therefore, that section 1050 was not complied with. Since defendant was represented by counsel, however, and did not object to the date set, he waived his right to have the trial set for an earlier date. (*Ray* v. *Superior Court, supra,* 208 Cal. 357, 358; *People* v. *Bradford,* 130 Cal.App.2d 606, 607-608 [279 P.2d 561].)

The public defender requested the delay from January 26 to February 10 because of his crowded calendar. The court asked defendant whether, under the circumstances, he waived trial at an earlier date. Defendant answered, "Yes." Thus defendant consented to the delay and thereby waived any right to be tried before February 10. (*In re Lopez,* 39 Cal.2d 118, 120 [245 P.2d 1].)

By consenting to trial on a date beyond the 60 day

period, however, a defendant does not waive the right to speedy trial thereafter, nor does he waive the requirement that further delay be justified by a showing of good cause therefor. (*In re Lopez, supra,* 39 Cal.2d at 120.) █ Defendant contends that the several postponements from February 10 to February 20 were not justified. The court's minutes disclose that each of these postponements was granted because of the "congested condition of the calendar." In *In re Lopez, supra,* 39 Cal.2d at 120, we held that "where the condition of the court's business would not permit the trial to proceed" good cause is shown and a continuance is justified. The burden of showing the existence of this condition, however, is upon the prosecution (*People* v. *Echols, supra,* 125 Cal.App.2d at 816), and on the record before us the prosecution has failed to sustain that burden. █ The minute notation that the case is continued for trial "owing to congested condition of the calendar" falls short of establishing that trial could not proceed in any department of the Superior Court of Los Angeles County. (*Herrick* v. *Municipal Court,* 151 Cal.App.2d 804, 807 [312 P.2d 264] and cases there cited; *People* v. *Echols, supra,* 125 Cal.App.2d at 816-817; Pen. Code, § 1050.) Since defendant, however, did not object to these postponements or move to dismiss the action, his consent to the delay is presumed. (*Ray* v. *Superior Court, supra,* 208 Cal. 357, 358.)

█ The People had 60 days from February 21, 1956, the date of the mistrial, to bring defendant to trial a second time. (*People* v. *Angelopoulos,* 30 Cal.App.2d 538, 543 [86 P.2d 873].) On March 28 the transcript of the preliminary hearing was introduced into evidence, and the trial commenced. Further continuances had to be grounded on good cause. (Pen. Code, § 1050.) █ The record discloses that the trial did not proceed on March 28 owing to the People's unpreparedness. Apparently April 20 was the earliest date next available to the court, and trial was continued to that date. The public defender accepted the continuance as "satisfactory." His counsel's assent to the continuance waived defendant's right to complain. (*Ray* v. *Superior Court, supra,* 208 Cal. 357, 358-359.)

█ With respect to the continuance from April 20 to April 23, the reporter's transcript reveals the following conversation:

"MR. JACKSON [district attorney]: Your Honor, I think I have already indicated that the People are not ready to proceed at this time because a necessary witness is not here,

Officer Berteaux and Sergeant Vega, his fellow officer, is on vacation. I heard from Officer Berteaux a short time ago, and it will be about 40 minutes before he can make it, and I believe counsel would not have any objection to a continuance for one week.

"THE DEFENDANT: Your Honor, may I say something? I thought I was entitled to a quick and speedy trial. I have been in jail for five months and twelve days already.

"THE COURT: You have been in jail five months and twelve days. That is a long time. There is no question about it.

"MR. JACKSON: Your Honor, if the defendant insists on going to trial here today, we can wait for the officer to be here.

"THE COURT: How about continuing it until Monday at 1:30?

"MR. BRILL [public defender] : I think that would be more satisfactory, your Honor.

.  .  .  .  .  .  .  .  .  .  .  .  .

"THE COURT: Will that be agreeable with you [defendant] ?

"THE DEFENDANT: It will have to be, I guess."

This conversation reveals that had defendant insisted, trial would have proceeded on April 20. Thus, he consented, even though reluctantly, to the continuance.

The most incriminating evidence introduced by the People was two packages containing 38 capsules of heroin taken from defendant's automobile at the time of his arrest and another capsule of heroin taken from his pocket. Defendant contends that this evidence should have been excluded as the product of an unlawful search.

The police had separately arrested three persons for narcotics offenses, each of whom, at different times and places, informed the police that they had obtained narcotics from one Joe Hernandes at his home at 112 East 111th Street. On November 8, 1955, two officers assigned to the narcotics detail went to the vicinity of Hernandes' residence. As they drove past the house, the officers saw defendant sitting in a 1941 Buick automobile parked across the street. They knew that defendant was not Hernandes. The officers drove around the block, and when they returned defendant was gone. The officers continued to patrol the area. They observed defendant traveling south on Main Street. He turned left on 111th Street, parked on the south side of the street, made a U-turn, and then parked on the north side, across the street from Hernandes' house. Defendant remained in his automobile

approximately half an hour and then walked towards Hernandes' house. He disappeared into an alley next to the house, which Hernandes used as a driveway. After 10 or 15 minutes defendant returned to his automobile, drove to the corner of Main Street and 111th, turned right on Main and proceeded north to 110th Street, turned right on 110th and drove east to San Pedro Street, turned right on San Pedro and proceeded south to 111th Place, drove along 111th Place and parked just east of the end of the alley that he had formerly entered. He opened the car door on the passenger side, reached towards the ground at the base of a tree and appeared to pick up some object. Defendant then drove away. The officers followed him a distance of one to three miles, and when defendant stopped at a red light, the officers approached his automobile, identified themselves and arrested him on suspicion of possessing narcotics. A search of the automobile disclosed the two packages of heroin. Defendant was taken to a nearby gas station and searched. The single capsule of heroin was found in his pocket. The officers had no search warrant, nor did they have a warrant for defendant's arrest.

Defendant contends that the officers arrested him without reasonable cause to believe that he had committed a felony (Pen. Code, § 836, subd. 3), and that therefore the search incident to the arrest was illegal. This contention cannot be sustained. The information obtained from the three persons previously arrested gave the officers reasonable cause to believe that narcotics were being sold by Hernandes at his residence, and defendant's furtive conduct in the vicinity of Hernandes' house gave the officers reasonable cause to believe that defendant had purchased narcotics and had them in his possession. This conduct distinguishes the present case from *People* v. *Schraier*, 141 Cal.App.2d 600 [297 P.2d 81], which held that merely leaving a house that had been under surveillance is not sufficient to justify arrest. *People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528], *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531], *People* v. *Yet Ning Yee*, 145 Cal. App.2d 513 [302 P.2d 616], *People* v. *Harvey*, 142 Cal. App.2d 728 [299 P.2d 310], and *Hernandez* v. *United States*, 17 F.2d 373, cited in appellant's brief are distinguishable on like grounds.

Other contentions were made by defendant in his brief in propria persona before this court appointed counsel to represent him. He contends that since he was not re-

arraigned after the mistrial, he did not admit the prior convictions for purposes of retrial. He cites no authority requiring rearraignment after a mistrial and we have discovered none. Nor do we perceive any logical or practical necessity for such a procedure. The record plainly discloses that defendant admitted the prior convictions, and section 1025 of the Penal Code provides that, unless withdrawn by consent of the court, such admission is conclusive in all subsequent proceedings.

Defendant's contention that his prior conviction of a misdemeanor violation of section 11500 of the Health and Safety Code, not being a felony, should not have been charged in the information is likewise without merit. (Health & Saf. Code, § 11712; see *People* v. *Burke,* 47 Cal.2d 45, 50 [301 P.2d 241].)

Neither at the preliminary hearing nor at the trial did the arresting officers identify defendant by name. They referred to him simply as "the defendant." Defendant contends that there is, therefore, no evidence that he is the person who committed the crime. It is abundantly clear from the record that defendant is the person referred to by the witnesses.

Lastly, defendant contends that he was denied effective assistance of counsel by virtue of the fact that, after the mistrial, when the court set retrial for March 28, 1956, defendant's counsel was not present. The record does not disclose the reason for counsel's absence. Nothing occurred on this occasion other that the setting of a date for retrial. The date set was well within 60 days after the mistrial (see *People* v. *Angelopoulos, supra,* 30 Cal.App.2d at 543), and defendant does not suggest how he was injured by the absence of counsel. (*People* v. *Rice,* 73 Cal. 220, 221-222 [14 P. 851].) Moreover, defendant was represented by counsel at the retrial, and the error now complained of was never brought to the attention of the trial court.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J., Dissenting.—I do not agree with the holding of the majority that the arresting officers had reasonable cause to believe that defendant was guilty of a crime and that the search of his automobile was legal, and therefore

the heroin found therein was admissible in evidence against him.

In the first place the officers had no reason to be more than merely suspicious that Hernandes was selling drugs, near whose home defendant had parked his car. The officers had arrested three persons on separate occasions who had told them they had obtained the drugs from Hernandes at his home. It does not appear what they were arrested for or that they had possession of or dealt in narcotics.

Secondly, the officers had no reason whatsoever to believe that defendant was committing a crime. They knew nothing of him until they drove by Hernandes' house and saw defendant in a parked car across the street. That certainly gave them no grounds to believe he was committing a crime even if we assume Hernandes was selling narcotics. Next, defendant got out of his car and went into the alley near Hernandes' home. Such conduct gives rise to no grounds for belief of the commission of a crime. There are many reasons why he may have gone into the alley wholly inconsistent with the theory that he had launched on a course of criminal conduct. Later, when defendant drove away in his car for a time and stopped his car, and reached toward the ground, the officers had no reason to believe he was picking up narcotics. There are likewise many reasonable causes for stopping having no connection with criminality. To say that it appeared that defendant had first gone to Hernandes' house and· made arrangements to buy some narcotics and later picked them up is pure speculation. If he were going to get narcotics he would have gotten them when he went down the alley, since he apparently was unaware of any police surveillance. The assumptions that must be made are too many and too great. It must be assumed that he went to Hernandes' house merely because he was near there; that Hernandes was selling narcotics; and that he picked up narcotics from the base of the tree although it was not known whether he picked up anything. The majority opinion states he was acting in a furtive manner but there is nothing to show that he was acting furtively or skulking. There is no more here than there was in *People* v. *Martin*, 46 Cal.2d 106 [293 P.2d 52], where two men were searched merely because they were in a car parked in lovers' lane. I refer to my discussion there (46 Cal.2d 108) as being clearly applicable to the case at bar.

Because the evidence against defendant was obtained as the result of an illegal search, I would reverse the judgment.