[Crim. No. 3402.   Fourth Dist., Div. Two.   Jan. 10, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH JAMES PRATHER II, Defendant and Appellant.

Herbert M. Porter for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert T. Jacobs, Deputy Attorney General, for Plaintiff and Respondent.

KERRIGAN, J.—Convicted of unlawfully transporting marijuana (Health & Saf. Code, § 11531) and possessing marijuana with intent to sell (Health & Saf. Code, § 11530.5), and sentenced to state prison on both counts, with execution of the sentence on the possession charge ordered permanently stayed in the event the sentence set by the Adult Authority on the marijuana transportation count be satisfactorily served, defendant appeals.

A Costa Mesa police officer attended a briefing session of all patrolmen at 7:30 on the morning of November 23, 1967. These meetings were held for the purpose of supplying the officers with information on stolen cars and wanted suspects. A photograph of Larry Lindsey, a murder suspect wanted by the Redondo Beach authorities, was circulated among the officers present. The picture was accompanied by a description of the suspect and a warning that he was armed and dangerous. The officer involved in this case carefully studied the photo and noted that the suspect had very long hair, a full beard, and a straggly moustache. The bulletin indicated that the suspect was a ''Hell's Angel'' type. 5 feet 10 inches in height, weighed 165 pounds, and was driving a model 1958 Cadillac.

Within an hour following the briefing, the same officer was driving his police unit south on Harbor Boulevard when he observed a model 1954 Buick driven by the defendant approach him from the opposite direction. The officer's first glimpse of defendant brought a "vivid picture" to his mind of the photograph of the Redondo Beach murder suspect he had seen depicted shortly before at the station. He turned around and followed. He pulled close to the Buick for the purpose of getting a better view of the driver. While following the defendant for several blocks, the officer ran a record check by radio on the license plate of defendant's car and received a report that the Buick had not been reported as stolen. The officer advised the station that he intended to make a felony traffic stop, and requested the assistance of a follow-up officer. He contacted a nearby police unit and stated he was going to make a stop and advised his fellow-officer that he thought he had detected the Redondo Beach murder suspect. Assured that assistance was en route, he turned on his red and amber lights. When defendant stopped by the curb, he raised his hands towards the ceiling of the car. The officer approached the defendant with his service revolver drawn. He asked defendant to get out of his car and walk to the curb. The follow-up officer arrived at the scene, patted defendant down, and advised him that he had been stopped since he matched the description of a wanted murder suspect.

When identification was requested, the defendant furnished the officers with a driver's license. Several "pink slips" evidencing title to different vehicles were observed in the defendant's wallet. He also had airline ticket envelopes with a name other than his own on them.

Utilizing the driver's license, the follow-up officer ran a record check on the defendant. While this investigation was in progress, the original officer formed the opinion that he had probable cause to arrest the defendant for suspicion of murder. The follow-up officer received the result of the record check, which indicated that defendant had two outstanding traffic warrants against him. Defendant was placed under arrest.

A thorough search of defendant's person then ensued. When the arresting officer was about to place the defendant in the back seat of the police unit, the latter requested that he. be allowed to remove two bags from the back seat of his car and place them in the trunk. The arresting officer permitted him to do so but accompanied him when he transferred the bags to

the trunk. Utilizing the defendant's keys, the follow-up officer commenced a search of the vehicle for weapons or any type of evidence which would tend to connect the defendant with the Redondo Beach murder. In the trunk the officer came on a brown satchel-type briefcase which was apparently one of the bags defendant had removed from the back seat and deposited in the trunk. The briefcase contained a .25 caliber automatic pistol and six kilos of marijuana wrapped in cellophane packets. A search of another suitcase revealed 10 kilos of marijuana. It was stipulated at trial that an expert would testify that 16 kilos of marijuana constituted such a quantity as to indicate that it was possessed for sale purposes, not merely for the personal use of the possessor.

It was later ascertained that defendant was not the murder suspect. He was prosecuted on the marijuana charges.

Defendant predicates his appeal on the following contentions: (1) The arresting officer did not have probable cause to stop and arrest him; (2) the search of his vehicle was not contemporaneous with his arrest since it did not occur until after he had placed his luggage in the trunk of his car with the permission of the arresting officer; (3) the conduct of the arresting officer indicated that he did not believe that defendant was a murder suspect; and (4) the arrest was based upon violation of traffic laws and not upon suspicion of murder, and arrests based upon traffic infractions do not justify a search of the arrestee's vehicle.

Simply stated, the crucial issue is whether the arresting officer had probable cause to arrest the defendant on suspicion of murder. Manifestly, the search was proper if made as an incident to defendant's arrest on the homicide charge.

A police officer may lawfully arrest a person without a warrant if the person has committed a public offense in the presence of the arresting officer, or if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836; *People* v. *Privett,* 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) Reasonable or probable cause has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that a person is guilty of a crime. (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].) The prosecution has the burden of establishing reasonable cause for an arrest. (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.

Rptr. 47, 381 P.2d 927] ; *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113].)

■ When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest. (*People* v. *Hill,* 69 Cal.2d 550, 553 [72 Cal.Rptr. 641, 446 P.2d 521] ; *People* v. *Kitchens,* 46 Cal.2d 260, 263 [294 P.2d 17] ; *People* v. *Yet Ning Yee,* 145 Cal.App.2d 513, 517-518 [302 P.2d 616].) ■ Probable cause to arrest a defendant as a person wanted for murder is adequately supported where the evidence indicates the defendant bears a striking resemblance to a picture of a suspect portrayed in a police bulletin. (*People* v. *Robertson,* 240 Cal.App.2d 99, 104 [49 Cal.Rptr. 345].) Where a physical description of one party is available to an officer and a second party fits such description, an arrest of the second party is justified. (*People* v. *Mitchell,* 251 Cal.App.2d 641, 644-645 [59 Cal.Rptr. 677].)

■ Initially, it should be noted that the arresting officer certainly had probable cause to arrest Lindsey. The officer had been furnished with a physical description of the murder suspect and had actually seen a photograph of Lindsey just an hour before he encountered the defendant. While the defendant urges that discrepancies exist between his appearance and that of the murder suspect in that Lindsey was 5 feet 10 inches tall compared to his being 6 feet 1 inch in height, that the suspect had a small mole on the left side of his face while he has no such mark, and that the suspect was reported to be driving a Cadillac, while he was driving a Buick, the fact remains that the trial court determined, in effect, that a strong or striking resemblance existed between the murder suspect and the defendant.

The record reflects that this cause was submitted to the trial court on the basis of a transcript of the preliminary examination. At the time of submission for determination of the guilt issue, defendant was personally present in court with counsel. He and his attorney expressly waived jury trial, and both stipulated that the trial judge could determine the ultimate issue of guilt or innocence on the basis of the testimony adduced at the preliminary hearing. The defendant did not testify, but his photograph and Lindsey's picture were introduced in evidence for the benefit of the trial court. The photographs correspond in many respects in that both the defendant and Lindsey wore beards, moustaches and long hair. Having witnessed the photograph the arresting officer had

viewed at the briefing session, and having examined the defendant's photograph, the trial court was in a position where it could resolve the issue as to whether a strong resemblance existed between the murder suspect and the defendant.

The evidence reflects that the arresting officer honestly and reasonably believed that the defendant was Lindsey. When he first sighted the defendant, the officer immediately radioed his station and sought assistance from another officer. He reported that he intended to make a felony stop. His actions at the scene indicate that he believed the defendant to be a potential murderer. He alighted from his police unit with his service revolver drawn. He had his gun ready for use after his fellow officer arrived. Although it was ascertained that the defendant was wanted on outstanding traffic warrants, such information would not derogate from the officer's reasonable belief that he was dealing with the murder suspect. Persons accused of crime frequently have numerous aliases, and Lindsey could have been wanted for traffic offenses under an assumed name. Nor is the fact that defendant was operating a Buick significant. Lindsey was a wanted man and fugitives often change cars.

Inasmuch as the patrolman was justified in arresting the defendant for murder, the search conducted by his fellow-officer was entirely proper since it was conducted at the scene of the arrest and contemporaneous therewith. *People* v. *Marshall,* 69 Cal.2d 51, 61 [69 Cal.Rptr. 585, 442 P.2d 665].)

In urging that the arresting officer did not have probable cause to arrest him for murder, defendant also maintains that the officer's conduct in permitting him to remove the contraband from the rear seat of his car and place it in the trunk suggests that the arresting officer did not verily believe that he was a dangerous killer. However, defendant's argument ignores the fact that during the time the briefcases or suitcases were being removed, the officer constantly remained behind the defendant and had his service revolver ready for immediate use.

While defendant urges that a search of the trunk of his car was unjustified because of his arrest on outstanding traffic warrants, such contention has been rendered moot inasmuch as the arrest was justified on the homicide charge.

The judgment of conviction is affirmed.

McCabe, P. J., and Fogg, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.