[Civ. No. 64684. Second Dist., Div. Three. Jan. 13, 1983.]

JUANA ARREOLA et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE VENTURA COUNTY JUDICIAL
DISTRICT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 64685. Second Dist., Div. Three, Jan. 13, 1983.]

JOHN E. BROWN et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE VENTURA COUNTY JUDICIAL
DISTRICT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard E. Erwin, Public Defender, for Petitioners.

Quin Denvir, State Public Defender, Charles M. Sevilla, Chief Deputy State Public Defender, Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, as Amici Curiae on behalf of Petitioners.

Dorothy L. Schechter, County Counsel, and Dennis L. Slivinski, Assistant County Counsel, for Respondent.

Michael D. Bradbury, District Attorney, Raymond J. Sinetar, Assistant District Attorney, Douglas P. Smith and Michael D. Schwartz, Deputy District Attorneys, for Real Party in Interest.

Ira Reiner, City Attorney (Los Angeles), Jack L. Brown and Greg Wolff, Deputy City Attorneys, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**KLEIN, P. J.**—An alternative writ of mandate was issued directing respondent Municipal Court for the County of Ventura (Municipal Court) to dismiss the misdemeanor cases against petitioners or to show cause why dismissal was not proper.

Dismissal would not be required although no trial occurred during the time set by Penal Code section 1382,[1] if good cause could be shown for the delay.

Because the People have not met their burden of establishing good cause in the instant case, we reluctantly mandate the Municipal Court to dismiss the pending cases.

### PROCEDURAL AND FACTUAL BACKGROUND[2]

Petitioners are a group of 38 defendants who were charged with misdemeanors, and who were to be tried by jury in the Municipal Court. None remained in custody pending trial. Each petitioner answered ready for trial before the last day set by section 1382, and each moved for dismissal when that date passed and trial had not commenced. All motions were denied. Each petitioner then waived time for further proceedings until January 6, 1982, preserving, however, the section 1382 issue raised earlier.

---

[1]Penal Code section 1382 provides in pertinent part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: [¶] . . . . [¶] 3. Regardless of when the complaint is filed, when a defendant in a misdemeanor case in an inferior court is not brought to trial within 30 days after he is arraigned if he is in custody at the time of arraignment, or in all other cases, within 45 days after his arraignment, . . . ."

All subsequent references to the Penal Code are by section number only, unless otherwise indicated.

[2]The facts relating to good cause recited herein were derived from the uncontested findings of a referee appointed to ascertain whether good cause existed to continue the cases beyond the limitation set forth in section 1382, and from a stipulation by the parties. Although we accept many of the referee's findings as correct, we do not agree with all of them and are not bound by certain findings. (*In re Hurlic* (1977) 20 Cal.3d 317, 325 [142 Cal.Rptr. 443, 572 P.2d 57].)

Between April 9, 1981, the earliest date any petitioner was ready for trial, and June 1, 1981, the latest date any petitioner could be brought to trial without a showing of good cause for delay, the Municipal Court had an unprecedented backlog of criminal cases. Several factors contributed to the backlog.

First, the Municipal Court had a policy of returning all defendants who plead guilty in any court other than the master calendar court to the master calendar judge for sentencing, even when another judge had been assigned to hear the case.

From October 1, 1980, to January 30, 1981, the master calendar judge was the Honorable Bruce Clark. Judge Clark's sentencing practices differed from his recent predecessor-judges in that he refused in most cases to state intended sentences in the event of a guilty plea and also imposed heavy long-term jail sentences where probation violations were found.

At the same time and throughout the relevant period, the district attorney's office maintained a rigid sentencing policy for misdemeanor cases, which hampered plea bargaining.

Reacting to the policies of the Municipal Court and the district attorney, the public defender, attorney for each petitioner, counseled clients to plead not guilty and to request a trial instead of attempting to plea bargain.

The backlog of criminal cases awaiting jury trials began to build at a sharply increased rate so that by April 20, 1981, approximately 100 such cases were trailing for trial.

On January 6, 1982, the Municipal Court set each case for hearing over the objection of counsel. Some petitioners (hereafter the Brown Group) received trial dates within 10 days, and others (hereafter the Arreola Group) did not. Motions for dismissal were renewed and denied.

All petitioners sought an alternative writ of mandate, which petition was denied.

The Brown and Arreola Groups separately petitioned this court for alternative writs of mandamus, during which period of time all proceedings were stayed. On March 5, 1982, this court denied both petitions together.

A joint appeal was taken to the Supreme Court and a hearing was granted. The case was then retransferred to this court with directions to issue an alternative writ of mandamus/prohibition, upon which we now proceed.

ISSUE

Article I, section 15, of the California Constitution guarantees criminal defendants the right to a speedy trial. The Legislature by the enactment of section 1382 quantified and implemented this right by establishing specific limits on the time during which a trial must take place. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 563 [162 Cal.Rptr. 431, 606 P.2d 738].)

Under the terms of the section, a defendant not in custody is entitled to have a misdemeanor charge dismissed if the case is not tried within 45 days of the date of arraignment, unless good cause for the delay is shown. The issue before this court is whether the circumstances existing from April to June in Ventura County amounted to good cause not to dismiss the cases against petitioners.

DISCUSSION

■ Deciding whether the prosecution has met its burden of proving good cause is within the trial court's discretion and will be reversed only for abuse. (*Owens* v. *Superior Court* (1980) 28 Cal.3d 238, 250-253 [168 Cal.Rptr. 466, 617 P.2d 1098]; *Sanchez* v. *Superior Court* (1982) 131 Cal.App.3d 884, 889 [182 Cal.Rptr. 703].) In reaching its decision, the trial court should consider all relevant factors. (*Ibid.*) General rules have evolved which limit this discretion.

1. *Chronic congestion provides no basis for good cause.*

■ One of the most important of the limiting parameters is that delay caused by chronic court congestion and overcrowding is not good cause. *People* v. *Johnson, supra,* 26 Cal.3d at page 571.[3] If the contrary were true, "[a] defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period."[4] (*Ibid.*) ■ Insufficient allocations of admitted-

---

[3]We are aware that the court in *Johnson* expressly limited its discussion to defendants who remained in custody pending trial, and that such defendants suffer special harm when trial is delayed. Nevertheless, because nonincarcerated defendants also need the protection of speedy trial (see *United States* v. *Marion* (1971) 404 U.S. 307, 320 [30 L.Ed.2d 468, 478, 92 S.Ct. 455]), and because the *Johnson* rationale is applicable to defendants not in custody, albeit not as forcefully, we give substantial weight to the Supreme Court's reasoning in this case.

[4]Judicial resources in the Municipal Court were inadequate. This is not a case where sufficient courtrooms and judges existed but were misallocated between civil and criminal cases. (Cf. *Perez* v. *Superior Court* (1980) 111 Cal.App.3d 994, 1000 [169 Cal.Rptr. 45].) Rather, the Municipal Court was committed exclusively to hearing criminal cases; any minor civil work done did not affect its ability to dispose of criminal matters.

Despite the dedication of all its resources to criminal matters, the Municipal Court system could provide jury trials in only 1.14 percent of the misdemeanor cases filed. Although we recognize that the demand for jury trial usually does not reach such high levels, a court that cannot provide a timely jury trial in as few as 1.5 percent of its filings is always bordering on being inadequately staffed.

ly limited public funds should not justify the deprivation of the right to speedy trial. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 538 [33 L.Ed.2d 101, 121, 92 S.Ct. 2182] (White, J., conc.); see also ABA Project on Standards for Crim. Justice, Stds. Relating to Speedy Trial, at pp. 27-28.) To permit chronic congestion to excuse delay removes an important incentive for the Legislature to provide adequate court funding and puts fulfillment of a significant constitutional right at the mercy of budgetary politics.

### 2. *Exceptional circumstances not present.*

■ While chronic congestion will not constitute good cause, court backlogs caused by *exceptional circumstances* will excuse delay in bringing a defendant to trial. (See *People* v. *Johnson, supra,* 26 Cal.3d at pp. 571-572.) "Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition." (ABA Project on Standards for Crim. Justice, Stds. Relating to Speedy Trial, *supra,* at p. 28.)

While the Municipal Court urges that the congestion here was caused by a unique and nonrecurring event—an unprecedented demand for trial, we do not believe that the demand herein constituted an exceptional circumstance.

The term "exceptional circumstance" has not been expressly defined. ABA Standards illustrates its statement with a mass arrest example implying reference to unusual events outside the control of judicial administrators. An extraordinary increase in case load was also mentioned as an example in *Lewis* v. *Superior Court* (1981) 122 Cal.App.3d 494, 498 [176 Cal.Rptr. 80],[5] as was an extraordinary circumstance which caused the absence of available judges. Whether it is *foreseeable* that the circumstance itself would impair speedy trial is also one factor to be considered. (See *People* v. *Johnson, supra,* 26 Cal.3d at p. 572.)

Here, the delay was not caused by an abrupt increase in the number of criminal filings. Indeed, the number of criminal filings during this period actually *decreased* by 7.8 percent. Nor was there a sharp and unexpected decrease in the number of available judges. Although two judges were missing, a number of extra judges were assigned by the Judicial Council. Rather, the backlog occurred because an increased number of defendants perceived it in their best interest to exercise their constitutional right to jury trial.

---

[5] In *Lewis* the court held that the absence of a large number of judges at a special educational conference was not good cause for failing to hear cases within statutory time limits.

Obviously, the presumption of innocence creates in every defendant a right to put the state to its proof (see *People* v. *Morales* (1967) 252 Cal.App.2d 537, 545-546 [60 Cal.Rptr. 671]), and every defendant accused of a misdemeanor has a constitutional right to be tried by a jury. (Cal. Const., art. I, § 16; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 298 [110 Cal.Rptr. 329, 515 P.2d 273].) Irrespective of the advent of plea bargaining as a fact of life in trial court administration, our criminal justice system assumes that the right to a jury trial will be exercised. Indeed, we require an express waiver of the right before the case can proceed either to court trial or to sentencing. (See Cal. Const., art. I, § 16; *People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; *In re Sutherland* (1972) 6 Cal.3d 666, 668 [100 Cal.Rptr. 129, 493 P.2d 857].)

In principle then, the exercise of this right by all defendants should be expected. Therefore, we cannot hold that the exercise thereof even in unprecedented numbers can be called an exceptional circumstance. The state must stand ready to provide a jury trial to every defendant. The state may not demand as a price in exchange therefor that a defendant give up the right to a speedy disposition of the cause. As a matter of policy the " 'courts should not participate in, or encourage, a procedure which obliges the accused to forfeit one constitutional right in order to retain the protection of another.' (*Allegrezza* v. *Superior Court* (1975) 47 Cal.App.3d 948, 952 [121 Cal.Rptr. 245].)" (*People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 653 [174 Cal.Rptr. 191].)

We recognize that having sufficient facilities at all times to try every criminal defendant is economically wasteful, and generally unnecessary, given the large number of cases which are disposed of by plea.[6] However, if the state chooses to provide only sufficient resources to handle the expected number of trials, it must be prepared to accept consequences should its prediction prove wrong. (See *Plezbert* v. *Superior Court* (1971) 22 Cal.App.3d 169, 173 [99 Cal.Rptr. 340] (risk of unexplained error or neglect rests on prosecutor).) The cost of its error cannot be passed on to defendants.

As a practical matter, here the Municipal Court was adequately staffed to handle timely the number of misdemeanor filings, provided that nothing disturbed the delicate and unstable balance which permitted the disposal of most cases by plea. However, policy changes by the Municipal Court, the district attorney, and the public defender altered that precarious balance and the number of cases requiring trial increased. Given the number and variety of factors that

---

[6]See, remarks of Chief Justice Warren Burger in an *Address at the American Bar Association Annual Convention* (New York Times (Aug. 11, 1970) p. 24, col. 4, reprinted in Kaplan, John, *Criminal Justice: Introductory Cases & Materials,* 2d ed. (Foundation Press, New York 1978) p. 403), to the effect that "It is an elementary fact, historically and statistically, that the system of courts—the number of judges, prosecutors, and of courtrooms—has been based on the premise that approximately 90 percent of all defendants will plead guilty, leaving only 10 percent, more or less, to be tried."

go into a plea in general, e.g., the public defender's assessment of the defense's strength, the district attorney's charging and strict sentencing policy and the court's sense of justice, and the frailty of the interplay among these factors, we find nothing unexpected much less extraordinary in the circumstances that resulted. To the contrary, given the combined factors, the resultant circumstances were entirely predictable.

We do not mean to imply that any of the parties acted improperly in performing in accordance with perceived propriety. The district attorney was duly elected on a no plea bargaining platform. Judge Clark, also as an elected official, was proud to be known as a tough judge. The public defender had occupied his same appointed position for some 14 years, representing Ventura County's indigent defendants.[7] Each acted in good faith within the bounds of his respective authority. Nevertheless, the consequence of their policy decisions was a predictable overloading of the court system. However, we cannot assign the detriment resulting from an overburdened docket because of the posturing and positioning of the principals involved to the forgotten individual defendants who did nothing more than exercise a constitutional right.

3. *Alleged benefit from the delay not present.*

■ The Municipal Court also urges that good cause existed because petitioners benefited from the delay. They argue that petitioners benefited as a group from the increased requests for trial either because the backlog gave them grounds for a motion to dismiss or because they had the opportunity to be sentenced by a judge different from the master calendar judge.

While we recognize that "[d]elay for defendant's benefit also constitutes good cause." (*People* v. *Johnson, supra,* 26 Cal.3d 557, 570), the benefits herein involved are not of the kind that are held to create good cause for delay. In cases where good cause was found, providing a benefit to the defendant *created* the delay. For example, in *Marcotte* v. *Municipal Court* (1975) 64 Cal.App.3d 235, 243 [134 Cal.Rptr. 314], the defendant could not be brought timely to trial because the state was appealing a suppression motion. (See also *People* v. *Tahtinen* (1958) 50 Cal.2d 127, 131 [323 P.2d 442] (motion to set aside information is good cause).)

---

[7]In answer to a question as to why the system "jammed up," the public defender replied: "The system jammed up because of three reasons. One reason was that the judges were unreasonable. The second reason was because the district attorney was unreasonable. They wouldn't help us negotiate pleas and dispose of cases. And the third reason was that the public defender was unreasonable. So with three different branches of government being unreasonable and none of them wanted [*sic*] to move, the system jammed up; that's all."

In explanation of the statement that the public defender was being unreasonable, the public defender responded that he was using the point of view of the judges and district attorney in that he didn't plead all his clients guilty.

In the cases before us, the alleged benefit of being able to move for dismissal arose *because of* the delay, and therefore the rule stated in *Johnson* logically would not apply. Also, the benefits referred to in the *Johnson* rule accrued before trial. (See, e.g., *People* v. *Rutkowsky* (1975) 53 Cal.App.3d 1069, 1073 [126 Cal.Rptr. 104] (motion to excuse judge).) Here, if the real benefit sought by the petitioners was a different sentencing judge, that benefit would not be received until after trial. Such an alleged benefit therefore could not excuse pretrial delay.

### 4. *Alleged waiver not available to prosecution.*

■ Finally, the Municipal Court urges that petitioners be deemed impliedly to have consented to the delay. Section 1382 specifically provides that dismissal is not required where trial is set beyond the statutory period with a defendant's express or implied consent. The Municipal Court claims that each petitioner "participated in the strategy instituted for the benefit of the class of public defender clients which resulted in a congestion created on their behalf," and that this should be considered implied consent. We cannot agree.

Each petitioner here did nothing more than refuse to waive his or her constitutional right to jury trial. Whatever the motive behind that action, it was within each defendant's right to exercise it. We cannot hold that the legitimate exercise of a constitutional right will imply waiver of another constitutional right.

### 5. *No good cause shown is dispositive.*

Because no good cause has been proved for failure to bring these cases timely to trial, the cases must be dismissed. It is therefore unnecessary for us to decide whether failure to set them all for trial within 10 days of January 6, 1981, was improper.

### DISPOSITION

Let a peremptory writ of mandate issue directing the Municipal Court to grant the petitioners' motions to dismiss the cases pending against them.

Lui, J., and Danielson, J., concurred.

Petitions for a rehearing were denied February 10, 1983, and the opinion was modified to read as printed above. The petitions of all parties for a hearing by the Supreme Court were denied March 10, 1983. Richardson, J., was of the opinion that the petitions should be granted.