[Crim. No. 5612.   Second Dist., Div. Three.   Oct. 23, 1956.]

THE PEOPLE, Respondent, v. JOE ARTHUR
WASHINGTON, Appellant.

Charles F. Legeman for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant was accused of violating the Dangerous Weapons Control Law (Pen. Code, § 12021) in that he willfully, unlawfully and feloniously had in his possession and under his custody and control, a .38 Special Smith & Wesson chrome-plated revolver, capable of being concealed upon the person. He had previously been convicted of assault with intent to ravish, a felony, in Alabama, and is still on parole for that offense. The trial was to a jury and after a verdict of guilty the court suspended proceedings and granted probation for a period of five years, the first two years to be spent in the county jail. Defendant appeals from the judgment (Pen. Code, § 1237) and the order denying him a new trial. The sole contention raised on the appeal is that the court erred prejudicially in making certain remarks to the jury after it had reported its inability to agree upon a verdict.

Roosevelt Harper, a witness for the People, testified that he had been at defendant's home during the early morning hours of June 18, 1955 and returned there about 5:30 a. m. to get a camera which he had left by mistake. He then walked to his own home and as he passed from the rear to the front of his house he saw defendant sitting in his own car nearby. Defendant called him over to the car. Defendant accused him of stealing $65 which he denied. He testified that he saw a revolver in a holster on the seat and that defendant picked up the gun and held it in his hand. Harper then told defendant that he would ask his wife if she would write a check for the $65, went into his house and called the police. After telephoning he returned to the car and told defendant to get rid of the gun. Defendant said "what gun" and suggested that Harper was drunk. The police officers who answered Harper's call searched both men, but found no gun. They told Harper that he may have been mistaken and defendant started to drive away.

Officer Bignell testified that he and his partner, Officer Chapman, arrived at about 6 a. m. They searched the men and the car but did not find the gun; that shortly after defendant began to drive away, he looked in the bushes on the

west side of Harper's house and found the gun and holster. He then stopped defendant and placed him under arrest.

Officer Chapman stated that he had a conversation with defendant at the police station and that defendant admitted hiding the gun in the bushes. Detective Inspector Harvey testified to a similar conversation. A fingerprint expert testified that a fingerprint pattern found on the gun was the same as one taken from defendant two days after the arrest. It was stipulated that the gun belonged to a George Grey, who resided in the same house as defendant.

Reverend Lawrence Rodgers, defendant's pastor, testified to his good reputation for truth, honesty and integrity. He stated that on the day following the arrest Harper told him that he had not seen defendant with the gun. This was denied by Harper on cross-examination.

Defendant, testifying in his own behalf, denied he had had a gun in his possession, denied having had a conversation with Officer Chapman, but admitted having had a conversation with Inspector Harvey. During the conversation with Harvey the gun was present and defendant stated that it was handed to him.

The jury retired at 10:45 a. m. and returned at about 3 p. m. to have the information and the testimony of Officer Chapman read. It returned again at 4:12 p. m. and the foreman stated: "Your Honor, we have agreed that we are a hung jury with a nine to three count. Further debate, apparently, seems to be useless to the members of the jury." The court then asked whether the jurors were deliberating in a friendly manner, and upon ascertaining that they were, told them that they had not been out long enough for him to discharge them because of their inability to agree. He asked the foreman whether there was a chance to reach a verdict within a reasonable time and the foreman replied: "Your Honor, before we came in at this time we discussed this matter. . . . It was the opinion of all 12 of us that further discussion would not change this vote even though we are, you might say, listening to each other." A juror then asked the court whether, if defendant was merely living in a house with someone who had a gun, that would constitute possession. The court replied that the question was speculative, that it would be for the jury to decide, but that he did not think that would be possession. He told the jurors that if they did not believe that defendant had the gun in his possession on the morning of June 18th, then the evidence of defendant's fingerprint on

the gun would not be sufficient to convict. He stated that: ''In other words, it boils down to this, That unless you believe and are convinced beyond a reasonable doubt that defendant had possession of that gun, possession and custody and control of that gun . . . that . . . morning, unless you believe that beyond a reasonable doubt you ought to find him not guilty. . . . It boils down to Leigh [the street on which the car was parked] on that Saturday morning. You either believe that or you don't believe it. If he had possession, control and custody there—he either did or didn't, and that is your issue.''

A juror asked the court whether mere knowledge that the gun was hidden in the bush would constitute possession. The court replied that: ''He either put it in the bush or had possession or somebody else put it in the bush and he didn't have possession. . . . I don't see how you can believe both ways. He either had possession or he didn't. I don't think the gun walked over there in that bush. . . . So you can take your choice who put the gun in the bush or who had possession of the gun. It is a rather simple issue; it is just a question of what you believe, that is all.''

The foreman told the court that the jury was divided as to who put the gun in the bush and the court stated: ''I am certainly not going to force a verdict. I will never do that. I will never just hold a jury so long that I am going to force a verdict because it might be a bad verdict. . . . It isn't legal to do that, but I do feel that a little bit more deliberation on your part might bring a verdict and if it doesn't, why then you should be discharged. . . . I think you ought to deliberate a little longer and see if there is any change.'' A juror then said he thought that the jury ought to deliberate a while longer. The court stated: ''We are all reasonable people . . . and here is a rather simple issue to decide and of course there is room for a difference of opinion . . . and you could be absolutely sincere and believe two people could sincerely differ as to their belief and opinion here.'' One of the jurors then remarked that he didn't think the difference of opinion was so deep that it couldn't be settled.

The colloquy between the court and jury was unduly extended. It lasted for 23 minutes. We have given a fair summary of it, omitting nothing of which complaint could justly be made. The jury retired at 4:35 p. m. and returned at 5:42 with a guilty verdict.

■ We said in *People* v. *Crowley,* 101 Cal.App.2d 71, 75 [224 P.2d 748]: ''It is well settled that a conviction will not be allowed to stand if the court has made remarks to the jurors which might reasonably be interpreted as indicating the court's belief of the guilt of the accused, and if it also appears upon the entire record that the infringement upon the rights of the defendant resulted in a miscarriage of justice. Under our system of law no reviewing court could hold otherwise. These questions must be answered on the factual basis of the individual case. ■ The courts have not hesitated to reverse convictions where trial judges have urged that an agreement be reached after learning that a small minority of the jurors were holding out for acquittal. [Citing cases.] It is manifestly true that insistence upon an agreement with knowledge that the jurors favoring acquittal constitute a small minority, is an indication of the court's belief that the verdict should be against the accused. The jurors would naturally suppose the court's remarks to be addressed to those who were in the minority. . . . ■ [W]hen the court gains information as to how the jurors are divided greater care should be exercised in order that the court's remarks may not be taken as an indication that the verdict should be one way or the other. However, the forbidden result can be accomplished without its having been disclosed how the jurors are divided upon the question of guilt. The jurors know how they are divided and the minority, especially if few in number, would be the ones to feel the weight of the pressure.''

■ With these cautionary principles in mind, we have concluded that the statements of the court were not prejudicial. *People* v. *Crowley, supra,* 101 Cal.App.2d 71, and other cases relied upon are not in point. It is unnecessary to point out the particulars in which they are distinguishable. The jurors had deliberated for a few hours when they reported their disagreement. The court ascertained on several occasions that they were discussing the case in a friendly manner and that although they were deadlocked, they were not averse to further deliberation. The court told them that he would not force a verdict because a forced verdict is generally a bad verdict. He asked them to deliberate for a reasonable time longer and told them that if they could not then agree they would be discharged. There was no attempt to coerce a verdict, either by a threat to lock up the jury for the night, by insist-

ence upon a verdict, or reference to the expense of another trial.

The court's remarks were fair to the defendant and did not exceed the bounds of permissible comment upon the issue to be decided. Defendant did not object to any of the court's remarks and we are of the view that he had no valid reason for objecting. The evidence, though in conflict, supports the verdict.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.