[Crim. No. 3861. First Dist., Div. One. Nov. 13, 1961.]

THE PEOPLE, Respondent, v. PETER BURCH, Appellant.

758

Howard B. Crittenden, Jr., under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Edward P. O'Brien, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Appellant has meticulously drawn to our attention every conceivable point in this case that might demonstrate error in the trial court. Despite his industry appellant fails to present any issue of importance or, indeed, of merit. As we shall point out, we can ascertain no reason why appellant's conviction for violation of section 12021 of the Penal Code (possession of a concealable weapon by an ex-felon) should not be affirmed.

On February 12, 1960, Inspectors Dunwell and Van Laak of the San Francisco Police Department, assigned to investigate the theft and stripping of an automobile, found the dismantled car near a little knoll in a wooded area of McLaren Park. Searching the area for evidence as to the guilty party, the officers, at about 3 p. m., observed appellant approaching the knoll, traveling toward them on a small dirt road which terminated at the knoll. Before reaching the officers, appellant turned his car around and journeyed away from the area. Deciding to investigate, the officers pursued and stopped appellant.

Inspector Dunwell approached appellant's car, exhibited his badge and identified himself, instructing appellant to produce his identification. Appellant complied. When appellant asked the officers why he had been stopped, they told him that they had done so because he had acted in a suspicious manner. The officers found that the 1960 Cadillac in which appellant had been driving was a car rented for the period from February 8 to 10, 1960. Upon the query of the officers as to whether he had been previously arrested, appellant denied any prior arrests other than for traffic tags or malicious mischief.

Inspector Dunwell then asked appellant if "it would be all right if . . . [he] searched his vehicle"; appellant "said it would." Appellant took the key from the ignition and opened the trunk; the officers found "nothing of a suspicious manner." Inspector Dunwell then "punched the glove compartment and finding it was locked . . . asked . . . [appellant] . . . if he would unlock it." Appellant did unlock it. In the glove compartment Inspector Dunwell found a small flat box with the word " 'Browning' " written across the top of it and a cartridge box of ammunition. The flat box contained a black-colored .25 caliber Browning Automatic.

Inspector Dunwell asked appellant " 'What about this gun,' " and, then, " 'How did this gun get in the car?' " According to Inspector Dunwell, appellant answered " 'Well,

maybe some friend put it in the car,' " or " 'A friend of mine put it in the car.' " While Inspector Dunwell was engaged in contacting Communications on the police radio, appellant stated to Inspector Van Laak that the gun belonged to a friend of his; that it was "worth approximately forty dollars" and that he had "brought it up to the city with his friend and they had intended to sell it."

Upon learning that appellant was an ex-convict, the officers booked appellant for suspicion of violating section 12021 of the Penal Code. During the course of the booking appellant produced from his pocket a vial of pills marked "for prescription use only," bearing the name "Xanthinux," which appellant laughingly described as " 'a sex pill.' " At the trial appellant's psychiatrist testified that the pill was a tonic, but that it had been advertised as a sex stimulant.

At the trial appellant testified as to why he came to McLaren Park at that particular time. He had returned from San Jose to San Francisco in order to see his psychiatrist. Since he could do so only after 6 o'clock he intended to use the interval between 3 and 6 o'clock to drive about San Francisco, and there was "a very excellent view at the top of the hill. . . ." Appellant denied seeing the pistol in the car at any time before its discovery. When the police found the weapon, he said, he recognized it and told the police that it belonged to his friend, Heald. Appellant testified that he had seen Heald three times between the date when he rented the car and the date of his arrest.

Heald, the alleged owner of the pistol, attested that at the time of the arrest he was living in a trailer court in San Jose and that appellant planned to move in with him. Heald said he had placed the weapon and the cartridges in appellant's car outside the presence of appellant and without appellant's knowledge. Heald put the pistol in the car because he and appellant planned to do some target shooting on the coast. On cross-examination Heald testified to the purchase of another automatic pistol during the week that appellant was arrested. Heald likewise stated that although he and appellant had gone to the coast with the pistol in the car they had not used it because of fog and people on the beach. Nor had Heald talked with appellant as to their intention to try out the pistol.

Appellant's first trial, for violation of section 12021, resulted in a hung jury; appellant suffered a conviction in the second trial. We consider the points on appeal *seriatim*.

## 1. *The dismissal for lack of a speedy trial.*

When, on May 26th, the court fixed the trial date for July 5th it did so in deference to appellant's representations. Upon the court's statement that "Now, we have got the problem of a trial date," appellant's counsel immediately pointed out "one of my important witnesses for the defense has planned to go on his vacation starting the 28th, for a 30-day vacation, which would put us in a bad spot." While appellant's counsel urged a date "like the 29th," the court, in view of another two-week case starting on the 20th, suggested July 5th as "a more realistic date. . . ." The parties stipulated to this date. Thus at least 30 days of the delay from May 3d to July 5th resulted from appellant's request that the court not set a date before one of his important witnesses returned from his vacation.

It is true that the court on July 1st continued the trial from July 5th to July 6th and that as a result, the trial fell on a date one day after the elapse of the 60-day statutory limitation. Since the first trial terminated on May 3d, when the jury failed to reach a verdict, section 1382 of the Penal Code permitted the state a period of 60 days to bring appellant to trial a second time. The 60th day, July 2d, fell on a Saturday, and the following Monday, July 4th, was, of course, a holiday; hence the code section (*People* v. *Brown* (1956) 141 Cal.App.2d 299 [296 P.2d 560]) required that the trial commence on July 5th in the absence of a showing of good cause to the contrary.

Neither the statute nor the decisions interpreting it, however, are so stringent as to excuse a defendant from trial because of delay caused by the court's accommodation of defendant's own request. Penal Code section 1382 provides that "unless good cause to the contrary is shown" the court "must order the action to be dismissed" if not brought to trial "within 60 days" of the dismissal of the jury for failure to agree. (*People* v. *Tahtinen* (1958) 50 Cal.2d 127, 132 [323 P.2d 442].) Division Two of this District Court of Appeal has recently held that in applying the section those days of postponement "requested by the defendant . . . must be deducted" from "the 60-day limit. . . ." (*People* v. *Harrison* (1960) 182 Cal.App.2d 758, 759 [6 Cal.Rptr. 345].) This decision, in turn, relies upon *People* v. *Martinelli* (1953) 118 Cal.App.2d 94 [257 P.2d 37], and *People* v. *Peter* (1912) 20 Cal.App. 151 [128 P. 415]. Ignoring the analysis of section 1382 of the Penal Code (see p. 97) in the first-named case,

appellant seeks to explain that the court decided only the inapplicability of a *coram nobis* proceeding to raise the point but the court likewise interpreted the section. Appellant would distinguish the second case upon the ground that it involved "consents which the record showed was a waiver of the right under *P.C. 1382.*" We believe, however, that appellant's request that the trial here not be set during the witness' 30-day vacation falls in no different category than a consent to a continuance; if anything, the request for the postponement is stronger reason than acquiescence in postponement for deducting the period of delay from the 60-day limitation.

We find somewhat anomalous appellant's argument that a delay to which he contributed, by requesting that the trial not be set during his witness' 30-day absence, defeated his constitutional and statutory right to a speedy trial.

2. *The requests for discovery.*

Appellant's contentions that the court improperly denied his requests for discovery founder in the first instance upon mootness and in the second upon the failure of a showing of abuse of the court's discretion.

The first objection portrays appellant's journey into the academic. A week before the trial, appellant sought the production of statements or notes made by Assistant District Attorney Dean of his interview with appellant's friend, Heald. The prosecution denied that Dean had ever seen Heald and accordingly had ever taken notes or statements of anything Heald said to him. Upon the submission of the matter, by affidavit, because of defense counsel's inability to attend the hearing, the court denied the motion. Although in the face of such absolute denials by the district attorney and the resolution of the factual dispute by the trial court, we find no showing of the abuse of the court's discretion, we need not rely upon that conclusion. Appellant, in any event, concedes: "It turned out that someone else other than Dean actually obtained the Heald statement." Hence the sought statement did not exist. Appellant raises no issue for our solution in seeking an order for the production of a hypothetical statement that takes its imagined shape only in the pages of appellant's brief.

The second instance of alleged error in discovery involves an equally futile excursion into the realm of supposed abuse of the trial court's discretion. Prior to the first trial appellant sought an order for the production of a notebook used by Officer Dunwell during the course of his investigation

of the case. Assertedly it contained certain notes of appellant's statements at the time of his arrest. The court ordered its production but the prosecution delivered only one of its pages. Appellant urges that he should have had the opportunity to examine the whole of it. He claims prejudice in that, in parallel manner, the prosecution produced only one page of the book at the second trial.

Appellant shows no abuse of the trial court's discretion. The court examined the whole book and found nothing in it except the one page which applied to the case. The court expressly stated: "[T]here's nothing that refers to your client in that book except what you saw, and everything else applies to some other case, doesn't even come near mentioning your client's name or have any connection with your client whatsoever." The court did not abuse its discretion in refusing appellant's request to inspect that part of the book which the court's examination disclosed did not pertain to the case.

In neither of the two instances above cited can we find an abuse of discretion which the decisions repose in the trial court. As the Supreme Court stated in *Powell* v. *Superior Court* (1957), 48 Cal.2d 704 [312 P.2d 698], it "is a widely recognized rule that application for pretrial inspection of a signed confession or admission or transcript of statements of an accused may be made by the latter and is addressed to the sound judicial discretion of the trial court, which has inherent power to order such an inspection in the interest of justice." (P. 708.) *People* v. *Chapman* (1959), 52 Cal.2d 95 [338 P.2d 428] makes it clear that the sought "documents in the possession of the People" must be "relevant and material to the defense. . . ." (P. 98.) (See *Vetter* v. *Superior Court* (1961), 189 Cal.App.2d 132, 135 [10 Cal. Rptr. 890].) These precepts surely did not require the trial court to compel the production of written material that was either nonexistent or unquestionably irrelevant.

3. *The demurrer to the information.*

 Appellant demurred to the information on the ground that it did not fully inform the defendant of the offense of which he was charged so that he might adequately prepare his defense. To illustrate his objection appellant states that the information would have covered a conviction for a violation of the statute occurring at any time within the three-year statute of limitations and anywhere within the City and County of San Francisco. Appellant further main-

tains that the indictment omits even an allegation that the weapon was in fact a deadly weapon. In his reply brief appellant finally adds that the indictment ''does not even charge the element'' that appellant ''knowingly and wilfully'' possessed the weapon.

The information does charge, in the words of the statute, violation of Penal Code section 12021. Appellant concedes that generally accusation in the words of the statute suffices if supplemented by the transcript of evidence before the committing magistrate, but states that the rule does not apply in this case because the prosecution at the preliminary hearing did not reveal all of its evidence and because the court, in the two instances discussed above, denied discovery procedures.

The information need not elaborate the particular circumstances of the offense; the transcript performs that function. ''An information is sufficient if it charges the defendant with the commission of a public offense in words sufficient to give him notice of the offense of which he is accused. (*People* v. *Roberts*, 40 Cal.2d 483, 486-487 [254 P.2d 501]; Pen. Code, § 952.) Only the essential elements of the offense need be charged. (*People* v. *Britton*, 6 Cal.2d 1, 5 [56 P.2d 494].) Notice of the particular manner, means, place or circumstances of the offense is given, not by detailed pleading, but by the transcript of the evidence before the committing magistrate.'' (*People* v. *Randazzo* (1957), 48 Cal.2d 484, 489 [310 P.2d 413].) Appellant cannot show that the transcript failed to disclose the place in San Francisco where the offense occurred, the time or date of its commission or the nature of the automatic pistol appellant possessed.

That the prosecution, according to appellant, asserted that ''there is additional evidence not included in the preliminary hearing'' does not negate the applicability of the rule. No mandate requires the prosecution at the preliminary hearing to produce the totality of the evidence. At that point the prosecution need produce only sufficient evidence to show that a public offense has been committed and that the prosecution has shown sufficient cause to believe the accused guilty of such offense. (Penal Code, §§ 871, 872.)

Appellant's complaint that the rejection of the discovery proceedings prevented the full preparation of his defense, and therefore denied him due process, confuses the function of such procedures with the requirement of due process at the preliminary hearing. The pursuits of the discovery procedure sought procurement of certain information;

its disposition involved an entirely different matter than that of the sufficiency of the showing at the preliminary hearing. In amalgamating his argument as to discovery and his contention as to due process appellant scrambles together two different substances.

### 4. *The unlawful search and seizure.*

Appellant urges a point of procedure and a point of substance to prove that because the police allegedly unlawfully procured the automatic pistol, the court should not have admitted it into evidence. We shall explain why we believe neither argument can stand.

The point of procedure involves the trial court's refusal, after the conclusion of the first trial, and pending the second, to grant appellant's motion to withdraw his plea so that he could reinstitute his motion to dismiss the information under Penal Code sections 995 and 997. Appellant argues that after the jury failed to reach a verdict in the first trial, and the case was transferred to another judge, appellant should have had the opportunity of presenting his motion to the second judge as an original proposition.

The matter, however, rested in the discretion of the trial judge, and, despite appellant's contrary assertion, we cannot find that the court did not properly exercise that discretion. That the issue does frame one of discretion appears from *Hall* v. *Superior Court* (1953), 120 Cal.App.2d 844 [262 P.2d 351]: "In *People* v. *Linton,* 102 Cal.App. 608, 611 [283 P. 389], the court declared that a trial court 'has power to allow the plea to be withdrawn for the purpose of hearing and determining such a motion, but the exercise of that power necessarily is left to the discretion of the trial judge'. . . ." (Pp. 850-851.) While appellant claims that the trial judge erroneously concluded that he lacked the power to permit the withdrawal of the plea, the record shows no such specific disclaimer. The court said "the motion has been waived"; it also stated, "I do not think that this Court should set aside the plea at this late stage."

In any event, appellant's argument fails as a matter of substance: the police did not procure the pistol by an unreasonable search and seizure; the court therefore properly overruled appellant's objection to its introduction into evidence. As we shall show, appellant consented to the search; the question of admissibility posed an issue for the court, not

the jury, and the court in this instance properly resolved that issue.

The search rested on these relevant facts. As we have explained above, the police officers when investigating the stripping of a stolen automobile in a remote portion of McLaren Park, observed appellant drive up a small road toward the knoll where they were stationed. Before reaching the officers, appellant made a U-turn and proceeded in the opposite direction. Considering the conduct of appellant suspicious, the officers pursued and stopped him. Upon their request to search the car appellant gave his consent. The officers asked that appellant unlock the trunk and glove compartments. He did so. In the glove compartment the inspectors found the automatic pistol.

Appellant objects that the officers improperly and unreasonably stopped the car and that appellant did not give a realistic consent to the search. As to the first point, the unusual reversal of appellant's car in a remote spot, where a previous car had been stripped, sufficed to justify the officers in stopping appellant for the purpose of interrogating him. To characterize their conduct as unreasonable is to abrogate our common knowledge of the suspicious nature of such sudden departure from the police. Indeed, the cases hold that the justification for an officer to engage in questioning alone is necessarily less than that which sustains his right to stop a car, arrest the driver and conduct a search. (*People* v. *Davis* (1961), 188 Cal.App.2d 718, 722 [10 Cal.Rptr. 610]; *People* v.*Anushevitz* (1960), 183 Cal.App.2d 752, 755 [6 Cal.Rptr. 785]; *People* v. *King* (1959), 175 Cal.App.2d 386, 390 [346 P.2d 235].)

Appellant's objection to the search stands on no firmer ground; appellant's consent sustains the legality of the inspection of the glove compartment. The record shows that appellant did not object to the search and, indeed, consented to it; moreover, appellant rendered such consent voluntarily. Innumerable cases hold that once consent to the search of property has been tendered, the taking of evidence pursuant to it is not unreasonable. (*People* v. *Gorg* (1955), 45 Cal.2d 776, 782 [291 P.2d 469]; *People* v. *McCoy* (1961), 195 Cal. App.2d 655, 657-658 [16 Cal.Rptr. 117].) While appellant contends that when police officers request it under such circumstances as these a party has no choice but to consent to such a search, the resolution of the issue rests with the trial court. (*Idem.*) We cannot hold as a matter of law that the

trial court in the light of the testimony could not have found a voluntary consent.

Nor can we identify this situation with that in *People* v. *Wilson* (1956), 145 Cal.App.2d 1 [301 P.2d 974] wherein Justice Peters held a consent to the search of a car not realistic since it was requested while the defendant was "in custody, and without informing him of his legal right to refuse permission. . . ." (P. 7.) The insufficiency of the "'permission' . . . granted after defendant was improperly arrested and improperly searched" does not necessarily apply to consent granted when defendant was neither improperly arrested nor improperly searched. (P. 7.)

 Drawing upon an alleged analogy between the rule that the court first passes upon the admissibility of a confession, subject to the later rejection of the confession by the jury if it finds the confession to be the product of coercion, appellant here contends that the jury should have passed upon the admissibility of the evidence. Appellant argues that "this was a question of fact which must be determined by the trior of fact. . . ." The suggested analogy is not new; it has, indeed, been the specific subject for rejection by the Supreme Court in *People* v. *Gorg, supra,* 45 Cal.2d 776, 781. For the cogent reasons stated by Justice Traynor in that case we conclude that the issue of the admissibility of the evidence presented exclusively a question of law for the court.

 Appellant's argument that the trial court should have rejected the automatic pistol as evidence because of an alleged unlawful search and seizure is no more valid than appellant's procedural point that the court erred in refusing to permit appellant to reinstitute his rejected motion to dismiss the information under Penal Code sections 995 and 997.

5. *Errors in the trial.*

 Appellant cites twenty-four instances which he alleges constitute "errors in the trial." Many of the claimed errors of this variegated collection lack any citation of authority or explanation. We group the points into seven categories which may be briefly considered as follows:

(a) Instances of alleged error as to which appellant failed to object; any possible prejudice to appellant could, upon objection, have been cured by court admonition.

(b) Instances of alleged inconsistency of testimony at the preliminary hearing and at the trial; the court ruling to the contrary finds support in the evidence.

(c) Instances in which the court permitted a showing of inconsistency but appellant maintains that the court reduced the effect of the disclosure of such inconsistency; the record does not sustain appellant's contentions.

(d) Instances in which the court properly inhibited defense counsel from introducing remote matters, which, according to him, had a "telling effect" at the first trial; the court exercised a proper discretion.

(e) The admission into evidence of the prior conviction of appellant for the offense of receiving stolen property. Since the prosecution faced the burden of proving that appellant was an ex-felon, the prior conviction constituted an essential element of the crime. Appellant admitted the plea of guilty in the case, but did not submit the fact of conviction; hence the point required proof.

(f) Instances in which the trial court sustained prosecution objections to questions by defense counsel which were either argumentative or prejudicial. Upon each occasion the court did not abuse its discretion.

(g) Instances in which the prosecution improperly attempted to prejudice the jury. We find only two instances which even raise a question for discussion. In questioning appellant's father as to the decorations in appellant's room the prosecution referred particularly to "Nazi flags"; the reference may have sought to persuade the jury that appellant was sympathetic with the Nazis. Appellant, however, entered no objection and even if the prosecution's effort may have constituted error, it could not have conceivably worked prejudicial error. Appellant places great emphasis on the alleged error of the trial court in permitting the prosecution on redirect examination to explain one of the entries in the memorandum book. The entry referred to the pill "Xanthinux." The prosecution witness explained that appellant, upon questioning, said that these were "sex pills." While appellant claims that the court erred in not sustaining his objection to the testimony, appellant himself introduced the page from the memorandum book bearing the entry. The presence of the page before the jury entitled the prosecution to explain the item.

Our examination of all of the 24 allegations of error convinces us that no error occurred.

6. *The proof of the prior conviction.*

Appellant apparently contends that the trial court improperly admitted into evidence appellant's prior con-

viction for burglary. The prosecution alleged in the information a conviction for receiving stolen property rather than one for burglary. Appellant argues that as to the burglary "no judgment had been entered and . . . probation had been granted. . . ." Although the burglary conviction consequently could not have constituted a disabling felony under section 12021 of the Penal Code (see *People* v. *Taylor* (1960), 178 Cal.App.2d 472 [3 Cal.Rptr. 186]), the conviction could still be treated as a felony for the purpose of impeaching appellant. The probation and the expiration of the period of probation as to the offense do not negate the prosecution impeachment "by showing . . . [appellant's] conviction of a felony even though thereafter he obtains a dismissal of the action under section 1203.4." (*People* v. *O'Brand* (1949), 92 Cal.App.2d 752, 756 [207 P.2d 1083].) The court admitted the evidence in the instant case for purposes of impeachment.

7. *The attempted impeachment of witness Heald.*

From a ruling sustaining his own objection, rendered outside the presence of the jury, appellant attempts to make a showing of prejudicial error. The impossible attempt fails.

After defense witness Heald had testified, the prosecution presented a rebuttal witness, a police officer, to attempt to impeach Heald by showing that Heald had previously made statements inconsistent with his testimony. The court excused the jury, required a prosecution offer of proof, and thereupon excluded the testimony. Appellant would assign prejudicial error because the jury knew that a police officer had not been allowed to testify over the defense objection. The jury did not so much as know the nature of the proffered testimony or the reason for its exclusion. We are at a loss to understand how prejudicial error can be conjured out of such a record.

8. *The testimony of Officer Van Laak.*

Appellant's objections to the testimony of Officer Van Laak, whom the prosecution called to destroy the veracity of appellant's testimony, cannot stand.

While admitting to a conversation with Van Laak, appellant denied that he talked to him about the gun. He likewise denied telling the officer that appellant and Heald had come to San Francisco to sell the gun, that Heald had paid $40 for the gun and that appellant, himself, thought the gun would bring about $20 or $25. Van Laak, however, testified

that appellant had said the gun was worth $40, that he and Heald had brought the gun to San Francisco and intended to sell it and that the expected price for the gun was $25.

Appellant contends that the court should have restricted Van Laak to refuting that part of the conversation which would have impeached appellant, and improperly allowed the introduction of the testimony which tended to prove the truth of the matters asserted. Yet the admissions of appellant showing his awareness of the presence of the gun constituted original evidence against him. ▇▇▇▇ As the court states in *People* v. *Morley* (1928), 89 Cal.App. 451 [265 P. 276], ''[d]eclarations and statements made by the defendant are original evidence against him, and the rules as to the impeachment of witnesses do not apply to the proof thereof, even if he takes the stand in his own defense.'' (P. 461.)

▇▇▇▇ Appellant's further suggested objection that the testimony did not constitute rebuttal evidence and should have been adduced during the prosecution's case in chief fails because (1) appellant, having failed to object upon this ground, cannot initially proffer the objection upon appeal (*People* v. *Wein* (1958), 50 Cal.2d 383, 407 [326 P.2d 457]); (2) the trial court determines in its discretion the order of proof (Pen. Code, § 1093, subd. 4); (3) appellant shows no abuse of discretion in the described circumstances (*People* v. *Wein, supra,* 50 Cal.2d 383; *People* v. *Byrd* (1954), 42 Cal. 2d 200, 211-212 [266 P.2d 505]).

9. *The prosecutor's prejudicial misconduct.*

We consider *seriatim* appellant's contentions that the district attorney committed prejudicial error in both his opening and closing arguments to the jury.

▇▇▇▇ Appellant once more argues that respondent improperly commented upon the three prior offenses which furnished the grounds for appellant's prior convictions. Again appellant ignores the fact that since appellant had taken the witness stand on his own behalf proof of these offenses had properly been introduced as grounds of impeachment.

▇▇▇▇ Appellant complains of the explanation of the prosecutor as to the nature of possession, contending that the exposition induced the jury to believe that possession without knowledge would suffice to constitute the offense charged. Actually the prosecution argument instead sought to distinguish possession from ownership and did not discuss

the matter of knowledge. In any event the trial court adequately instructed the jury that "[p]ossession, as that word is used in the definition of the crime involved in this case, includes the additional element of knowledge."

Appellant claims that the district attorney in his argument in several instances misquoted the testimony. The recorded statements do not vary materially from the arguments of the prosecutor.

Finally appellant cites a variety of further instances of alleged misconduct of the prosecutor. Some of these, such as the prosecutor's comments that appellant's parole officer had not given him permission to be in San Francisco, related to testimony in the record. Others, such as the fact that the prosecutor snapped the pistol which was in evidence, raise minuscule contentions. Somewhat closer to the line was the prosecution's argument as to the alleged "sex pills" and their possible use in a sex crime. The prosecutor did not misrepresent the facts and only drew from them a possibly reasonable inference, but, in any event, as we have stated *supra,* appellant entered no objection to the argument. "[D]efendant may not now be heard to object to the district attorney's argument, since he made no objection at the time it was made and did not ask the trial court to instruct the jury to disregard it." (*People* v. *Robillard* (1960), 55 Cal.2d 88, 102 [10 Cal.Rptr. 167, 358 P.2d 295].)

10. *Defense counsel's argument to the jury.*

The court properly excluded from defense counsel's argument to the jury descriptions of his personal experiences and his attempts, in effect, to introduce testimony.

Appellant's counsel embarked on a narration of certain of his personal experiences as an overseas government officer during World War II. While an attorney may allude to such personal experiences, these must not "seriously exceed the bounds of fair illustration. . . ." (*People* v. *Torres* (1948), 84 Cal.App.2d 787, 796 [192 P.2d 45].) We cannot say the trial court abused its discretion in excluding counsel's attempted detailed account which blossomed from illustration into full-blown narration.

The court likewise excluded counsel's explanation of his experience with the glove compartment of his own car, his description of the weather on the day of appellant's arrest, his illustration of the possible concealment of the pistol, and

his comment on the price of the pistol. These efforts went beyond generalized illustration; they came closer to the introduction of testimony outside the record. The rulings show no abuse of discretion, and even if erroneous could not conceivably constitute prejudicial error.

11. *Due process.*

Appellant contends that he suffered a denial of due process because the court below conditioned his procurement of the transcript of the first trial upon his payment for it. He contends that his impecunity prevents this purchase and thus thwarts a showing that the prosecution ''by a sustained, planned course of conduct'' prevented the full presentation of his case. When appellant moved that this court order the transcript of the first trial we agreed to consider at this point whether his contention should be sustained.

We do not see how a comparison of the transcripts could affect the propriety of the process of the second trial. The rulings in the second trial must stand upon their own legality; they cannot become correct or incorrect by allusion to the procedure of the first trial which necessarily occurred under different circumstances.

We believe our analysis of all of appellant's points demonstrates their lack of legal basis. Appellant suffered neither prejudicial error nor denial of due process; he obtained a fair trial.

We affirm the judgment and the order denying a new trial.

Bray, P. J., concurred.

A petition for a rehearing was denied December 4, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.