[Crim. No. 54. Fifth Dist. Mar. 25, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JIM OWEN VANDERBURG, Defendant and Appellant.

Jack B. Lamb for Defendant and Appellant.

Stanley Mosk, Attorney General, and Doris H. Maier, Assistant Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—Jim Owen Vanderburg appeals from a judgment of conviction entered after a verdict of guilty; the information charged that:

"The said Jim Owen Vanderburg on or about the 21st day of April . . . nineteen hundred and sixty-two, . . . did wilfully, unlawfully and feloniously have in his possession and under his custody and control a certain firearm, to wit, a German P-38 automatic pistol, capable of being concealed upon the person, the said Jim Owen Vanderburg having heretofore been duly and legally convicted of felonies, to wit, violation

of section 288 of the California Penal Code, on March 21, 1956, . . . and, violation of section 236 of the California Penal Code, on May 2, 1960, . . ."

After reference to the probation officer, the defendant was sentenced to state's prison and appealed.

During the trial it was stipulated that Vanderburg had been convicted previously of the two felonies alleged in the information, violations of sections 288 and 236 of the Penal Code.

The record shows that on April 21, 1962, at about 4:15 p.m., the defendant entered the Modesto Loan and Jewelry Company premises at 900 I Street in Modesto. The proprietor, Mr. Goldberg, and his elderly father-in-law, Mr. Arambel, were in the shop; the father-in-law is suffering from defective eyesight due to glaucoma, and he was not called as a witness. A short time afterwards, a police officer named Gorman who knew the defendant also entered the store.

On direct examination Mr. Goldberg testified that Vanderburg came in with a pistol in a paper bag that he laid on the desk and asked if he could borrow $10 on it. Goldberg told him he could and wrote up a ticket; Vanderburg signed his name to the ticket and wrote in the address "1814 Dallas Street, Modesto." The transaction lasted about five or six minutes; Goldberg testified that there was no one other than himself, his father-in-law, Gorman and Vanderburg in the store during the transaction.

On cross-examination Mr. Goldberg testified that he did not remember whether or not he saw Vanderburg when he first walked into the store, but that he recalled seeing him at the counter with the gun and that there was no one else with Vanderburg.

The police officer, Harry Gorman, testified that he entered the Modesto Loan and Jewelry Company premises at about 4 o'clock on April 21, 1962; when he first arrived Goldberg's father-in-law was standing inside the door, and Vanderburg and Goldberg were at the counter transacting some kind of business. Gorman spoke to all three men, but stayed about 6 feet away from Goldberg and Vanderburg; he saw a German pistol lying on the counter; when Vanderburg left the store Gorman talked to Goldberg about the gun and Vanderburg. Gorman testified that he saw Goldberg give money to Vanderburg and that the latter signed a regular police report book used by pawnbrokers.

The defense testimony differed sharply in numerous partic-

ulars from the prosecution evidence. Earl McClure stated that he gave the pistol in question to one Wiley Vanderburg, brother of the defendant, as compensation for painting his car, and that he never saw defendant with the gun. Wiley Vanderburg testified that McClure gave him the weapon, and he gave it to Floyd Johnson for working on his car; that on the 21st day of April, 1962, he and Johnson were going to get some materials to paint Floyd's car, and at that time Floyd had the gun in his automobile; they invited defendant to go along with them; they parked near the pawnshop. Wiley stated that Floyd and defendant went into the pawnshop together; Wiley walked behind them up to the door; the gun was in Floyd's hand in a paper package. Wiley testified that defendant got out of the car only because Floyd did not have any identification card, and Floyd asked defendant to go into the store for the reason that defendant knew the proprietor; that Floyd and defendant had walked inside the store up to the counter, when Wiley beckoned to Floyd and the two of them stood outside of the store looking at a rifle in the window; as the two started to leave, Gorman approached and entered the pawnshop. On cross-examination Wiley testified that he wanted to show Floyd the rifle they had taken to be pawned a couple of months before. Wiley testified that when they were walking down the street Floyd was carrying the pistol. Floyd and Wiley returned to the car first; defendant came a minute or two later.

Floyd Johnson swore that he and Wiley received the gun for payment on a paint job and that on the 21st of April, 1962, he had it in his possession; that he had the pistol ready and brought it down to the shop in the morning because a fellow was supposed to buy it; when the man did not come, he decided to pawn it. Floyd testified that he asked defendant to go to the pawnshop with him and Wiley; that he had a paper sack around the barrel of the gun, which he was carrying on the street; he carried the weapon into the pawnshop, and defendant went up to the counter with him, but Wiley did not go all the way into the store; that he did not see Mr. Goldberg in the store but went up to the counter and left the sack and the pistol on it.

Defendant gave testimony that he entered the shop with Floyd, who carried the gun and put it on the counter; that when he first went into the store he did not see Mr. Goldberg because he was crouched down at the safe. He admitted that he signed the register as pawner of the gun and that he re-

ceived the money. Goldberg picked up the gun, started to cock it, and it got jammed; defendant tried to explain the working of the pistol to Goldberg, and he did not know whether he touched it in the process, but if he did do so, it was in Goldberg's hands at the time. Defendant estimated that he was in the store about three or four minutes.

Appellant contends that the evidence was insufficient to support the verdict. This claim is unsound, no matter whose account of the happenings in the pawnshop is accepted. If in fact the defendant entered the store, as first stated by Goldberg, carrying the gun with him and proceeding to pawn it, it is inferentially conceded by defendant's counsel that such evidence would be sufficient to warrant a conviction. ██ And even if the factual account given by the defendant and his witnesses should be found correct, there was ample evidence to warrant the jury verdict.

Section 12021 of the California Penal Code reads as follows: ". . . any person who has been convicted of a felony . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding one year or by a fine not exceeding . . . ($500). . . ."

Appellant had sufficient possession and control over the automatic pistol to bring him within the provisions of the statute. (*People* v. *De Prima,* 172 Cal.App.2d 109 [341 P.2d 840]; *People* v. *De Falco,* 176 Cal.App.2d 590 [1 Cal.Rptr. 578].) Defendant offered the gun to the pawnbroker for the purpose of securing a loan, signed the register as the owner and received the money. At that time there was no one else present in the pawnshop who claimed or exercised any possession or control over the pistol. It was obvious to the jury from its appearance that the weapon was capable of being concealed upon the person of defendant. The appellant had custody and control of the gun when he offered it to the pawnbroker for a loan, and he exercised that control when he pawned the weapon and signed the register with his name and address and received the money. (See *People* v. *Garcia,* 187 Cal.App. 2d 93, 101-102 [9 Cal.Rptr. 493].)

██ "It is not the province of the reviewing court to overturn the jury's verdict when it is supported by substantial evidence including the reasonable inferences to be drawn. . . ." (*People* v. *Cullen,* 37 Cal.2d 614, 625 [234 P.2d 1].)

Every intendment is in favor of the judgment, and the weight and effect of the evidence is properly determinable by the trier of fact. (*People* v. *Sweeney*, 55 Cal.2d 27 [9 Cal. Rptr. 793, 22 Cal.Rptr. 178] ; *People* v. *Watson*, 177 Cal.App. 2d 296 [2 Cal.Rptr. 53].)

Appellant claims that the court erred in instructing the jury. But the charge was correct in form and content. The court gave an instruction almost identical with CALJIC 743: "To constitute the offense charged against the defendant in the information, the possession of the weapon knowingly by him, as charged, is sufficient, and if the defendant knowingly had such possession, his intent or purpose, if any, in respect thereto is immaterial."

Instructions No. 747, 748, 746, and 745 of CALJIC were also given, in effect, as follows: "In the crime of which defendant is charged in the information, neither the actual concealment of a firearm upon the person nor the carrying of such a weapon is a necessary element of the offense."

"You are instructed that no specific purpose or intent is an essential element of the offense charged in the information."

"Every person who has been convicted of a felony and who owns or has in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person, is guilty of a crime."

"Within the meaning of the law, a person is in possession of a weapon when it is under his dominion and control and to his knowledge either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him."

Appellant's principal attack on the court's charge is directed against the last instruction quoted above, and it is argued that conviction is authorized by it if the defendant is merely found to be in the presence of such a weapon. It should be noted, however, that the word "presence" is always coupled with the words "custody" or "possession."

We find no error in the above instructions. (*People* v. *Voss*, 2 Cal.App.2d 188, 191 [37 P.2d 846] ; *People* v. *Ferguson*, 129 Cal.App. 300 [18 P.2d 741] ; *People* v. *McKinney*, 9 Cal.App.2d 523, 525 [50 P.2d 827] ; *People* v. *Patterson*, 102 Cal.App.2d 675 [228 P.2d 51] ; *People* v. *Israel*, 91 Cal. App.2d 773 [206 P.2d 62] ; *People* v. *Moore*, 143 Cal.App.2d 333 [299 P.2d 691] ; *People* v. *Burch*, 196 Cal.App.2d 754, 770-771 [17 Cal.Rptr. 102].)

462

Appellant next complains that the chief deputy district attorney was guilty of prejudicial misconduct; this claim appears in its several specifications to be without substance.

In his opening argument the prosecutor said that the pawnshop proprietor, Goldberg, would testify that defendant entered his shop carrying a paper bag containing the automatic pistol. Subsequently, on cross-examination Goldberg said he did not remember if he actually saw defendant walking in or not. However, Goldberg first testified in line with the prosecution's statement. Consequently, this portion of the opening statement was based on reasonable expectation that such evidence would be given; the statement was presumably made in good faith, and no prejudicial error resulted.

The prosecuting attorney said custody or control ''... means under his dominion and control and possession of the particular weapon, if it could be immediately accessible to him. If it could be exclusive to him. In other words, he may not have it concealed. It must be under his custody and control. He may not be carrying it, but it must be under his custody or control and under his dominion. In other words, is it immediately accessible to him; is it exclusively—the control of the weapon, is it exclusive to him?'' This discussion was an attempt to set forth the elements of the crime, which finds support in the authorities. (*People* v. *Washington,* 145 Cal. App.2d 341 [302 P.2d 352]; *People* v. *Garcia, supra,* 187 Cal.App.2d 93; *People* v. *Pearson,* 150 Cal.App.2d 811 [311 P.2d 142]; *People* v. *Watson, supra,* 177 Cal.App.2d 296; see also *People* v. *Burch, supra,* p. 771.)

The deputy district attorney said in his argument to the jury: ''... under this particular law there is no specific intent required.'' This was a correct statement; specific intent is not an element of the crime. (*People* v. *Gonzales,* 72 Cal.App. 626, 630 [237 P. 812]; 53 Cal.Jur.2d, Weapons, § 8, p. 112; *People* v. *McKinney, supra,* 9 Cal.App.2d 523.)

Furthermore, it should be noted that defense counsel did not object, move to strike, or request an admonition to the jury in connection with any of the above instances of alleged prejudicial misconduct; consequently, such claimed errors can not be objected to for the first time on appeal. (*People* v. *Hampton,* 47 Cal.2d 239 [302 P.2d 300]; *People* v. *Turville,* 51 Cal.2d 620 [335 P.2d 678]; *People* v. *Pearson, supra,* p. 819.)

Defendant urges prejudicial error in the statement of the prosecuting attorney at the time of the probation hear-

ing: "I think the Probation Officer is in error inasmuch as he states that it appears to be a technical violation. Had the defendant in this case not been convicted of a felony, there would not have been a violation. I beg to differ with the Probation Officer in that regard. I think that Section 12025 of the Penal Code makes it a misdemeanor for any person . . . the way it is stated in the Probation Report, 'if the defendant had not been convicted of a felony, the present offense would not be an offense at all.' That is an incorrect statement."

While it seems probable that the prosecuting attorney was confusing the crime of carrying a *concealed* weapon with that of the possession by a previously convicted felon of a weapon capable of being concealed on the person, no prejudice resulted. The record shows that the judge had already stated he did not agree with the conclusion in the probation report relative to clemency, and it is not likely that he was influenced in the slightest by what the deputy district attorney said. The action of the trial court in denying probation was within proper discretionary limits. (*People* v. *Hainline,* 219 Cal. 532 [28 P.2d 16]; *People* v. *Cooper,* 123 Cal.App.2d 353 [266 P.2d 566]; *Williams* v. *State of New York,* 337 U.S. 241 [69 S.Ct. 1079, 93 L.Ed. 1337].)

 The defendant finally contends that he was entitled to a more complete record on appeal. He calls attention to the fact that his notice of appeal asks for a "compclet trail transcript" and urges that because of this phraseology the transcript should have contained matters that are normally excluded from a record unless requested in the manner required by rule 33(b) of California Rules of Court.* That rule requires a defendant at the time of filing his appeal, if he wishes to have included in the transcript any of the matters referred to in that section, to file also with the county clerk an application describing the additional material which he desires to have incorporated in the transcript and the points on which he intends to rely in justification thereof. (*People* v. *Denne,* 141 Cal.App.2d 499, 514 [297 P.2d 451]; *People* v. *Burroughs,* 200 Cal.App.2d 629, 633 [19 Cal.Rptr. 344].) No such request was made in connection with the appeal, and when the defendant later filed a written suggestion for augmentation of the record in this court, no showing was made by him as to the advisability or helpfulness of such augmentation. The defendant's request was opposed on that ground by the Attor-

---

*Formerly Rules on Appeal, rule 33(b).

ney General, and this court denied augmentation without prejudice. No renewal of the motion was made. And appellant makes no showing that he was in any way prejudiced by any consequent omission in the record.

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.