Filed 5/31/24  In re R.S. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.S.,<br><br>    Defendant and Appellant. | A167288<br><br>(Alameda County<br>Super. Ct. No. JV02927910) |

At the conclusion of a contested jurisdictional hearing, the juvenile court found true allegations that R.S. (the minor) committed possession of a firearm by a minor (a handgun) and possession of an assault weapon (a pistol).  The juvenile court declared the minor a ward of the court and placed him on probation.  On appeal, the minor contends there is insufficient evidence he possessed the firearms.  We disagree and affirm.[1]

_____

[1] The jurisdictional hearing was held in Sacramento County Superior Court.  The matter was then transferred to Alameda County Superior Court for disposition.  The minor filed two defective notices of appeal: a premature notice in Sacramento County (before the transfer) and an untimely notice in Alameda County months after disposition.  Nevertheless, the parties have briefed the merits of the minor's appeal without claiming any prejudice from

## BACKGROUND

In 2022, the minor was a member of the Oakland gang Case, which is aligned with the Sacramento gang G-Mobb Starz (Starz). He was at a house in Sacramento with three Starz members. One of the Starz broadcast a video to Instagram Live. The broadcast showed a split-screen video chat between those at the house and a fourth Starz member who was driving his car "in the field." At the house, Starz member Nigel Patterson pointed an assault-style pistol at the camera; another Starz member made a hand sign used by the gang. Then the minor appeared, chatting with the driver while someone at the house moved the barrel of the pistol into the frame next to the minor's head. The group at the house left the chat.

The minor then broadcast a video from his own Instagram account. He filmed himself walking through the house, speaking to the camera, and making hand signs linked to the Starz and other gangs. Midway through the video, the minor looked offscreen and then angled his camera down to show Starz member Steven Lindsey walking by with the pistol from the first video. The minor said something unintelligible. A few seconds later, the minor made a gang sign while stating, "You know what it is."

After broadcasting these videos, the minor and the three Starz members left the house in Patterson's car, a Dodge Charger.[2] The minor was driving. A short time later, officers stopped the car and found a handgun inside. The gun was underneath a sweatshirt and a shoe box on the raised

_____

the faulty notices, which must be liberally construed. (Cal. Rules of Court, rule 8.405(a)(3).) We therefore treat the premature notice of appeal as timely filed and will reach the merits. (*Id.*, rule 8.406(d); see *Norco Delivery Service, Inc. v. Owens–Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 960–961.)

[2] While it seems that the minor and the three Starz members entered the Dodge Charger soon after leaving the house, the exact time is unclear.

2

floorboard between where backseat passengers would sit, with the barrel facing the front of the car and the grip facing the back. At the house where the videos were filmed, officers found the pistol inside a backpack. The pistol was loaded with five rounds of ammunition.

The district attorney filed a wardship petition alleging the minor unlawfully possessed both the handgun (Pen. Code, § 29610) and the pistol (*id.*, § 30605, subd. (a)). At a contested jurisdictional hearing, the prosecution introduced the Instagram videos broadcast by the minor and his associate. In addition, a police officer testified as a gang expert. He explained that gang members commonly use social media to broadcast their affiliations and activities and to publicly disrespect their rivals. This includes displaying firearms as "intimidation." The officer opined that assault pistols like the one shown in the videos are typically "gang guns," which are shared among members of the gang because they are expensive and hard to conceal and carry. Such weapons tend to be shared on "an if-needed kind of basis," either to display on social media or to commit a shooting. It is common for a gang gun to be shared across allied gangs. Access is typically granted to "whoever needs it, or whoever is trusted enough to have it." The expert concluded the pistol shown in the videos was a gang gun.

At the conclusion of the hearing, the juvenile court found both counts true beyond a reasonable doubt based on a theory of constructive possession. The juvenile court found it "[s]ignificant[]" that the minor "broadcast his own live-stream of events in the residence" and that he "mov[ed] the focus of the camera from his own face to Lindsey . . . holding the assault weapon" and "referr[ed] to the assault weapon" by stating, " 'You know what it is.' " The juvenile court explained that the minor's video broadcast—with the Starz members' cooperation—of "his gang membership and affiliation with other

3

gang members," "his taunting of rivals,"[3] and "his association with an assault weapon" demonstrated the pistol was shared and the minor had the right to control it. Considering the "nature of th[e] relationship" between the minor and the three Starz members, "the threats and intimidation" the minor had broadcast, and the shared pistol, the court found the handgun was meant "to provide protection for all four" individuals in Patterson's car and was "to be used by any of the four for that purpose"; the court determined all four were aware the handgun was in the car. The court declared the minor a ward of the court (Welf. & Inst. Code, § 602) and placed him on probation.

## DISCUSSION

The minor contends insufficient evidence supports the juvenile court's findings that he had constructive possession of the pistol and the handgun. Applying our deferential standard of review, we must disagree.

### I. Standard of Review

"The standard of review in juvenile proceedings involving criminal behavior is the same as that required in adult criminal trials: We review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the charge, so that a reasonable trier of fact could find guilt beyond a reasonable doubt." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1518.) Substantial evidence must be of ponderable legal significance and must be reasonable, credible, and of solid value. (*In re S.F.* (2023) 91 Cal.App.5th 696, 713.) In reviewing for such evidence, we resolve neither credibility issues nor evidentiary conflicts, for these are the exclusive province of the trial judge. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We accept logical inferences from circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) But a reasonable inference may not

---

[3] The "taunting" appears to have been misattributed to the minor.

4

rest on suspicion alone; a finding of fact must be based on evidence rather than mere speculation. (*People v. Davis* (2013) 57 Cal.4th 353, 360.)

## II. Constructive Possession

To possess a firearm means having actual control, care, and management of the weapon. (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951.) "Possession may be actual or constructive." (*Ibid*.)

Constructive possession requires the knowing exercise of a right to control, either directly or through another person. (*People v. Bay* (2019) 40 Cal.App.5th 126, 132 (*Bay*).) This encompasses a potentially wide variety of conduct in a range of settings showing a person exercised such intentional direction over contraband that they may fairly be punished as if they had physical possession. (*People v. Scott* (2009) 45 Cal.4th 743, 757.) Where contraband was in the physical custody of another person, possession may be imputed to an accused who had an immediate right to exercise control over the item (*People v. Francis* (1969) 71 Cal.2d 66, 71 (*Francis*)) or who "directed or instructed" the other person to act (*Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 507, fn. 9). Possession also may be found when contraband was in a place subject to the joint control of the accused and others. (*Francis*, at p. 71.)

Though possession may be shared, mere proximity or opportunity to access contraband—by itself—is not sufficient to infer possession. (*Bay*, *supra*, 40 Cal.App.5th at p. 132.) "Nor is knowledge of a gun's presence." (*In re I.A.* (2020) 48 Cal.App.5th 767, 779 (*I.A.*).) Something more is required to support the inference, though the extra support may be rather slight. (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 728.)

5

### III. Substantial Evidence That the Minor Possessed the Pistol Shown in the Videos

The minor claims there was no evidence he had control over the pistol, an apparently shared weapon of a gang to which he did not belong.

The minor's Instagram video supports the juvenile court's contrary inference. The court found the minor focused his camera to broadcast an allied Starz gang member holding the pistol, then referred back to the weapon by stating, "You know what it is." Based on these findings, it would be reasonable to infer that the minor and the Starz member coordinated the display of the gun, whether verbally or non-verbally. This inference is bolstered by the expert's testimony that gang guns are commonly shared by allied gangs, including for display on social media. The juvenile court's findings that the minor and the Starz members shared the pistol and that the minor had the right to control it are supported by substantial evidence. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 410–411 [circumstantial evidence supported inference that defendant had at least joint control over shotgun tossed from car he rode in with others].)

The minor contends there was insufficient evidence he had a right to actually "hold" or "use" the pistol. But possession of a weapon "for even a limited time and purpose" may support a finding of guilt beyond a reasonable doubt. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.) The crime is committed when the accused " 'in any way' " has a firearm within their control: they need not be armed with it or have it readily available to deploy. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052, quoting *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1410.) Here, even though the minor did not wield the pistol himself, it was reasonable for the juvenile court to infer that he used it to show his Starz affiliates did and thereby intimidate others.

This evidence is sufficient to support the trial court's finding of constructive possession.  (See *People v. Vanderburg* (1963) 214 Cal.App.2d 455, 458–460 [defendant had possession of gun he pawned, even assuming it belonged to someone else who carried it into the pawnshop].)

Similarly unpersuasive is the minor's reliance on *People v. Sifuentes* (2011) 195 Cal.App.4th 1410 (*Sifuentes*).[4]  There, police officers found the defendant in a motel room with a fellow gang member and two women.  (*Id.* at pp. 1413–1414.)  There were two beds.  (*Id.* at p. 1414.)  The defendant was on the first bed near the door while the other gang member knelt by the second bed.  (*Ibid.*)  The officers found a gun under the mattress of the second bed.  (*Ibid.*)  An expert testified generally concerning gang guns, explaining that aside from "certain restrictions," they are accessible to all gang members "[a]t most times."  (*Id.* at p. 1415.)  *Sifuentes* held this testimony was inadequate to support the defendant's conviction for possession of his fellow gang member's gun, explaining that even assuming the weapon was a gang gun, the expert "testified certain restrictions applied" to accessing such guns and "did not explain these restrictions" or link the defendant "to the particular firearm" found next to his associate.  (*Id.* at p. 1419.)  But the circumstances in *Sifuentes* were different: the defendant was not doing anything gang-related when the gun was discovered under his companion's mattress.  (See *id.* at pp. 1417–1418.)  Here, the juvenile court found that the minor and his associates displayed the pistol in gang-related videos for purposes of "intimidation."  An expert testified that the pistol was a gang gun and such guns are commonly displayed by allied gang members on social media.

---

[4] *Sifuentes* was disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.

In sum, we conclude substantial evidence supports the juvenile court's finding that the minor had constructive possession of the pistol.

## IV. Substantial Evidence that the Minor Possessed the Handgun Found in the Car

The minor contends there was no substantial evidence he had control over the handgun found in Patterson's car, or even that he knew it was there.

As previously mentioned, constructive possession may be found where contraband is in a place subject to joint control by the accused and others. (*Francis*, *supra*, 71 Cal.2d at p. 71.) Here, the minor drove the car where the handgun was found, "supporting an inference that he had the right to exercise . . . control" over the vehicle and its contents. (*People v. Valerio* (1970) 13 Cal.App.3d 912, 923.) Other circumstances reinforce this inference: the occupants of the car were members of affiliated gangs who, as the juvenile court observed, had just broadcast "threats and intimidation" to rivals and might need to defend themselves from responsive attacks. The court's inference of control is reasonable even though the minor did not own the car he was driving and despite the lack of expert testimony that the handgun was a gang gun. (See *People v. Taylor* (1984) 151 Cal.App.3d 432, 434, 436 [driver had constructive possession of gun apparently thrown by passenger from a third party's car]; cf. *I.A.*, *supra*, 48 Cal.App.5th at pp. 771, 778–779 [no constructive possession of gun shot by youth's fellow gang member merely because youth was in a car behind the shooter's car and had once touched the gun].)

The context relied on by the juvenile court also supports an inference that the minor knew the handgun was in Patterson's car, particularly given the court's findings that the gun was accessible to everyone in the car and may have been visible to the minor. (See *Bay, supra,* 40 Cal.App.5th at

pp. 130, 132 [driver's knowledge of drugs in backpack supported inference he controlled all its contents, including pistol registered to individual linked only to others in the car]; *People v. Gant* (1968) 264 Cal.App.2d 420, 424–425 [car occupants' knowledge appropriately inferred from proximity and accessibility of guns to each].)

There is substantial evidence in the record to support the juvenile court's finding of true as to both counts beyond a reasonable doubt based on a theory of constructive possession.

## DISPOSITION

The judgment is affirmed.

HITE, J. *

We concur:

BROWN, P. J.
STREETER, J.

*People v. R.S.* (A167288)

---

\* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.